717 S.E.2d 909

STATE of West Virginia, ex rel. RICH-MOND AMERICAN HOMES OF WEST VIRGINIA, INC., and M.D.C. Holdings, Inc., et al., Petitioners

v.

Honorable David H. SANDERS, Judge of the Circuit Court of Jefferson County, West Virginia, Respondent.

No. 11–0770.

Supreme Court of Appeals of West Virginia.

Submitted Sept. 28, 2011.

Decided Nov. 21, 2011.

See also 226 W.Va. 103, 697 S.E.2d 139.

A.L. Emch, Esq., Rodney Stieger, Esq., Jackson Kelly PLLC, Charleston, WV, for the Petitioners.

Christopher J. Regan, Esq., James G. Bordas, III, Esq., Jason E. Causey, Esq., Bordas & Bordas, PLLC, Wheeling, WV, Andrew C. Skinner, Esq., Laura C. Davis, Esq., Charles Town, WV, for the Respondent.

KETCHUM, Justice:

In this petition seeking a writ of prohibition, we are once again asked to wrestle with the arbitration bear.[1] The Federal Arbitration Act ("the FAA")[2] indicates a congressional intent to protect arbitration agreements, and ensure that courts treat them like any other contract. But the FAA does not require courts to enforce an arbitration clause when the parties never reached a "meeting of the minds" about the clause. A court may submit to arbitration "only those disputes … that the parties have agreed to submit."[3]

 A federal district court claimed that arbitration clauses in adhesion contracts "traditionally have been met with hostility by state courts in West Virginia."[4] The district court misunderstands our case law. This Court is conscious of the "ancient judicial hostility to arbitration"[5] that the FAA was intended to correct, and the courts of this State are not hostile to arbitration or to adhesion contracts. We are hostile toward contracts of adhesion that are unconscionable and rely upon arbitration as an artifice to defraud a weaker party of rights clearly provided by the common law or statute.

The petitioner—a new-home constructor—has been sued by 40 adults and children who live in 11 new homes built by the petitioner. The residents claim they have been injured by radon gas leaking into their homes because of improper construction by the petitioner. The petitioner argues that the agreement to purchase the new homes requires the residents to arbitrate their claims—whether they signed the agreement or not. The circuit court hearing the claims read the entire purchase agreement, found the arbitration provision was ambiguous and unconscionable, and refused to compel the residents into arbitration.

The petitioner now seeks a writ of prohibition to compel the residents to arbitrate their claims. As set forth below, we find that the record supports the circuit court's determination that the arbitration provision was ambiguous, unconscionable, and unenforceable. We therefore deny the requested writ.

1. *See* Richard Neely, "Wrestling the Arbitration Bear: An In–Depth Look at the Abuses and Injustices of Arbitration," *The West Virginia Lawyer* 22 (July–September 2011).

2. 9 U.S.C. §§ 1 to 16.

3. *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 943, 115 S.Ct. 1920, 131 L.Ed.2d 985 (1995).

4. *Wilson v. Dell Financial Services, L.L.C.*, 2009 WL 2160775 at *3 (S.D.W.Va.2009) (rejecting an argument that an arbitration clause should be "bargained for" to be enforceable, finding it "unreasonably burdens the ability to form arbitration agreements"); *Miller v. Dell Financial Services, L.L.C.*, 2009 WL 5794126 at *4 (S.D.W.Va. 2009) (same).

5. *Mastrobuono v. Shearson Lehman Hutton, Inc.*, 514 U.S. 52, 56, 115 S.Ct. 1212, 131 L.Ed.2d 76 (1995). *See Brown v. Genesis Healthcare Corp.*, 228 W.Va. 646, 671, 724 S.E.2d 250, 275 (2011) (discussing the historical hostility to arbitration that inspired the adoption of the Federal Arbitration Act in 1925).

## I.

### Facts and Background

Petitioner Richmond American Homes of West Virginia, Inc. (and its parent company, M.D.C. Holdings, Inc.), built a number of homes in Jefferson County and Berkeley County, West Virginia.

The respondents are 40 adults and children who lived in homes built by Richmond, and are the plaintiffs in 11 civil actions filed against Richmond on May 12, 2010, in the Circuit Court of Jefferson County. These 11 actions are collectively referred to by the last name of the plaintiffs in the first suit: *Thorin*.[6]

The plaintiffs' case against Richmond centers on radon, a naturally-occurring, colorless and odorless radioactive gas that comes from the decomposition of uranium in soil, rock, and groundwater. Radon is a carcinogen, causing an aggressive form of small-cell lung cancer. The plaintiffs assert that breathing radon is the second leading cause of lung cancer behind smoking.

The U.S. Environmental Protection Agency has identified Jefferson County as a "high radon area." The parties have indicated that local building codes require some form of radon mitigation system in newly constructed homes. Further, various industry groups recommend that builders of new residential homes in areas with high radon levels install radon mitigation systems. The plaintiffs take the position that radon mitigation systems are easy and inexpensive to install during the construction of a new home.

Several years after purchasing their homes from Richmond, the plaintiffs allege they discovered excessive levels of radon in their homes. Inspectors hired by the plaintiffs claim that this was because Richmond had failed to install, or improperly installed, or fraudulently installed inoperable, radon mitigation systems.

■ The plaintiffs brought suit against Richmond on various legal theories. The plaintiffs assert breach of contract, breach of warranty, and breach of implied warranty claims. The plaintiffs also assert theories of negligent construction, fraud, misrepresentation, concealment, and intentional and negligent infliction of emotional distress. The plaintiffs seek compensatory and punitive damages. The plaintiffs also seek damages for future medical monitoring costs, ostensibly because the plaintiffs need future diagnostic testing to screen for radon-caused cancer.[7]

In June 2010, Richmond filed a motion with the circuit court seeking an order dismissing the plaintiffs' complaint, and compelling *all* 40 of the plaintiffs to participate in arbitration. Richmond argued that *some* of the plaintiffs had signed Purchase Agreements with Richmond incident to the purchase of their homes, and in Section 21 of those Purchase Agreements the parties had agreed to submit any claims to arbitration. Specifically, 17 of the 40 plaintiffs had signed written agreements and bought their homes directly from Richmond; 18 plaintiffs had not signed an agreement, but were close family members—mainly children below the age of majority—of the signatory plaintiffs; and 5 plaintiffs lived in homes built by Richmond, but purchased the homes from a non-party

---

6. Approximately 187 other plaintiffs—collectively referred to as the *Joy,* the *Bauer,* and the *Saliba* plaintiffs—have filed similar actions in Jefferson County concerning 45 homes constructed by petitioner Richmond.

These cases were previously before the Court in *State ex rel. Richmond American Homes of West Virginia, Inc. v. Sanders,* 226 W.Va. 103, 697 S.E.2d 139 (2010), because the circuit court imposed sanctions against Richmond, including striking its answers and defenses, because: (1) Richmond's president unilaterally initiated contact with some of the plaintiffs to offer to settle the cases; (2) Richmond allegedly engaged in discovery misconduct; and (3) Richmond's in-house counsel allegedly attempted to create a conflict by offering plaintiffs' counsel employment in litigating similar cases nationwide. While we found merit to the circuit court's actions, we were concerned by the lack of specific findings concerning the serious misconduct alleged. We vacated the circuit court's orders, but permitted the court to reconsider imposing the sanctions upon proper findings.

7. "A cause of action exists under West Virginia law for the recovery of medical monitoring costs, where it can be proven that such expenses are necessary and reasonably certain to be incurred as a proximate result of a defendant's tortious conduct." Syllabus Point 2, *Bower v. Westinghouse Elec. Corp.,* 206 W.Va. 133, 522 S.E.2d 424 (1999).

who entered into a written Purchase Agreement with Richmond. Still, Richmond asserted that both the signatory and non-signatory plaintiffs were bound by the Purchase Agreements and obligated to arbitrate, rather than litigate, their claims.

The plaintiffs responded to Richmond's motion by specifically asserting that the arbitration clause in the Purchase Agreements was unenforceable. The plaintiffs argued that the arbitration clause was vague, contradictory and confusing, and therefore was to be construed against the drafter, Richmond. Further, the plaintiffs argued that the arbitration clause in the Purchase Agreement was a contract of adhesion with numerous terms that were procedurally and substantively unconscionable. Lastly, the plaintiffs contended that the arbitration clause could not be enforced against individuals who did not sign a Purchase Agreement.

In lengthy, detailed orders dated September 3, 2010,[8] the circuit court denied Richmond's motion and refused to compel any of the plaintiffs to participate in arbitration.

The circuit court examined the arbitration clause in the context of the entire Purchase Agreement, and the circumstances surrounding the execution of the Agreement. Among the numerous reasons supporting its orders, the circuit court applied state contract law and found that the arbitration provision was unconscionable. The circuit court found that the arbitration process created by the Agreement "implicitly or explicitly limited the [plaintiffs'] ability to seek compensatory damages for property damage and bodily injury; limited the [plaintiffs'] ability to seek punitive damages to redress and punish misconduct; improperly relieved [Richmond] from liability for the breach of the implied warranty of habitability;" and limited the plaintiffs' ability to seek damages caused by radon gas in their homes.

The circuit court also found the arbitration provision was unconscionable because it contained a "class action waiver"[9] that required the plaintiffs to bring any "action ... by independent action" and precluded the plaintiffs from serving either "as a class representative" or as "a class member to pursue such action." The circuit court ruled that there was a "rebuttable presumption" that the arbitration provision was unconscionable merely because it contained the class action waiver. The circuit court also stated that while the plaintiffs were not seeking class action status, they were intending to seek a consolidation of their claims for purposes of trial.[10] The circuit court found that the language of the class action waiver imposed excessive and unnecessary costs and delays because it prevented the plaintiffs from consolidating their nearly identical claims into one proceeding.

The circuit court also determined that the arbitration provision was ambiguous and must be construed against Richmond. The arbitration provision—Section 21 of the Purchase Agreement—contained a subsection on mediation that Richmond argued was "part and parcel" of the arbitration provision. In five places, the mediation provision makes reference to the possibility of the parties bringing a "court action," "civil action," or relying upon the discretion of a "judge." The circuit court found that these repeated references to "court action" suggested that the plaintiffs "retain the ability to vindicate their claims in court," and created an ambiguity with regard to arbitration that must be construed against Richmond, the drafter of the adhesion contract.

Taken together, the circuit court concluded that the arbitration provision was ambiguous, unconscionable and unenforceable, and therefore refused to compel the plaintiffs to participate in arbitration.

On May 6, 2011, Richmond filed a petition seeking a writ of prohibition from this Court.

---

8. The circuit court entered separate orders in each of the 11 cases; however, the text of each order is identical.

9. Only nine of the eleven agreements signed by the plaintiffs contained the class action waiver in the arbitration provision.

10. Rule 42(a) of the *West Virginia Rules of Civil Procedure* [1998] states, in part:

(a) Consolidation of Actions in Same Court. When actions involving a common question of law or fact are pending before the court, it may order a joint hearing or trial of any or all the matters in issue in the actions; it may order all the actions consolidated; and it may make such orders concerning proceedings therein as may tend to avoid unnecessary costs or delay. . . .

Richmond asks that we vacate the circuit court's September 3, 2010 orders, stay litigation of the plaintiffs' claims, and compel the plaintiffs to arbitrate their claims.

## II.

### Standard of Review

■■■ Defendant Richmond American Homes does not contend that the circuit court exceeded its jurisdiction, but rather asserts that the circuit court committed several clear legal errors that exceeded its legitimate powers. In such cases, we set forth the following standard of review in Syllabus Point 4, *State ex rel. Hoover v. Berger*, 199 W.Va. 12, 483 S.E.2d 12 (1996):

> In determining whether to entertain and issue the writ of prohibition for cases not involving an absence of jurisdiction but only where it is claimed that the lower tribunal exceeded its legitimate powers, this Court will examine five factors: (1) whether the party seeking the writ has no other adequate means, such as direct appeal, to obtain the desired relief; (2) whether the petitioner will be damaged or prejudiced in a way that is not correctable on appeal; (3) whether the lower tribunal's order is clearly erroneous as a matter of law; (4) whether the lower tribunal's order is an oft repeated error or manifests persistent disregard for either procedural or substantive law; and (5) whether the lower tribunal's order raises new and important problems or issues of law of first impression. These factors are general guidelines that serve as a useful starting point for

determining whether a discretionary writ of prohibition should issue. Although all five factors need not be satisfied, it is clear that the third factor, the existence of clear error as a matter of law, should be given substantial weight.

## III.

### Discussion

Defendant Richmond contends that the circuit court's orders regarding arbitration were clearly erroneous as a matter of law for three different reasons. First, it argues that the circuit court erred when it examined contract terms separate from Section 21, the arbitration provision, to assess whether the arbitration provision was unenforceable. Richmond argues that, under the Federal Arbitration Act, the circuit court was prohibited from considering any facts or contract terms other than those found in the arbitration provision.

Second, Richmond argues that the arbitration provision is not unconscionable under West Virginia law. As part of this argument, Richmond challenges the circuit court's determination that there was a "rebuttable presumption" that the provision was unconscionable because it contained a class action waiver. Richmond asserts that the circuit court erred in light this Court's recent decision in *State ex rel. AT & T Mobility, LLC v. Wilson,*[11] and the United States Supreme Court's recent decision in *AT & T Mobility LLC v. Concepcion.*[12]

Finally, Richmond argues that the arbitration provision was not ambiguous merely because it repeatedly made reference to "court action."[13]

---

**11.** 226 W.Va. 572, 703 S.E.2d 543 (2010).

**12.** 563 U.S. ——, 131 S.Ct. 1740, 179 L.Ed.2d 742 (2011).

**13.** Richmond raises one additional point of error that we do not consider. The circuit court ruled that only parties who have actually signed an agreement containing an arbitration clause can be forced to arbitrate their claims. *See* Syllabus Point 3, *State ex rel. United Asphalt Suppliers, Inc. v. Sanders*, 204 W.Va. 23, 511 S.E.2d 134 (1998) ("A court may not direct a nonsignatory to an agreement containing an arbitration clause to participate in an arbitration proceeding absent evidence that would justify consideration of whether the nonsignatory exception to the rule requiring express assent to arbitration should be

invoked."). Richmond asserts that the circuit court erred. *See Thomson–CSF, S.A. v. American Arbitration Ass'n*, 64 F.3d 773, 776 (2nd Cir. 1995) (there are "a number of theories under which nonsignatories may be bound to the arbitration agreements of others. Those theories arise out of common law principles of contract and agency law. Accordingly, we have recognized five theories for binding nonsignatories to arbitration agreements: 1) incorporation by reference; 2) assumption; 3) agency; 4) veil-piercing/alter ego; and 5) estoppel.").

As we discuss in the text, the circuit court was correct in its determination that the arbitration provision was ambiguous and unconscionable, and could not be enforced to compel *any* of the plaintiffs to arbitrate, signatories and non-signatories alike. Accordingly, Richmond's argu-

## A.

### *The Federal Arbitration Act and the Doctrine of Severability*

Richmond's first argument concerns the Federal Arbitration Act ("the FAA"). Richmond takes the position that under the FAA, when a trial court is assessing the enforceability of an arbitration clause, the trial court must "sever" the arbitration clause from the remaining contract. Richmond asserts that the trial court must confine its assessment to the precise arbitration clause being challenged and may not consider other language in the contract. Richmond argues that the circuit court erred when it relied upon contract language other than that found in the arbitration clause to find that the arbitration clause was unenforceable. As we discuss below, we reject Richmond's argument.

▉ We begin by discussing the applicable law relating to the FAA. In *Brown v. Genesis Healthcare Corp.*, we noted that the "primary substantive provision" [14] of the FAA is Section 2.[15] We interpreted Section 2 as saying that "a written provision to settle by arbitration a controversy arising out of a contract that evidences a transaction affecting interstate commerce is valid, irrevocable, and enforceable, unless the provision is found to be invalid, revocable or unenforceable upon a ground that exists at law or in equity for the revocation of any contract." [16] In other words, Section 2 contains two parts: "the first part holds that written arbitration agreements affecting interstate commerce are 'valid, irrevocable, and enforceable,' but the second part is a 'savings clause' that allows courts to invalidate those arbitration agreements using general contract principles." [17]

▉ The purpose of the FAA is to impel "courts to treat arbitration agreements like any other contract. The Act does not favor or elevate arbitration agreements to a level of importance above all other contracts; it simply ensures that private agreements to arbitrate are enforced according to their terms." [18]

The plaintiffs assert that the FAA has no application in the instant case, and as authority cite to Syllabus Point 21 of *Brown*, where we said:

> Congress did not intend for arbitration agreements, adopted prior to an occurrence of negligence that results in a personal injury or wrongful death, and which require questions about the negligence be submitted to arbitration, to be governed by the Federal Arbitration Act.

Our opinion in *Brown* was issued in June 2011. In its September 2010 orders, the circuit court did not have this point of law available. We will therefore, in fairness to the circuit court and in an abundance of caution, not apply this syllabus point. We will instead explore the circuit court's reasoning and evaluate the parties' arguments through West Virginia's long-standing contract principles.

▉ When a motion to compel arbitration is filed in a trial court, the FAA requires the following procedure:

> When a trial court is required to rule upon a motion to compel arbitration pursuant to the Federal Arbitration Act, 9 U.S.C. §§ 1–307 (2006), the authority of the trial court is limited to determining the threshold issues of (1) whether a valid arbitration agreement exists between the parties; and (2) whether the claims

---

ments on this point of error are irrelevant, and we decline to consider them.

**14.** *Brown*, 228 W.Va. at 669–70, 724 S.E.2d at 273–74 (*quoting Moses H. Cone Memorial Hosp. v. Mercury Const. Corp.*, 460 U.S. 1, 24, 103 S.Ct. 927, 74 L.Ed.2d 765 (1983)).

**15.** 9 U.S.C. § 2. Section 2 states:

A written provision in any maritime transaction or a contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction, or the refusal to perform

the whole or any part thereof, or an agreement in writing to submit to arbitration an existing controversy arising out of such a contract, transaction, or refusal, shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract.

**16.** Syllabus Point 6, *Brown, supra.*

**17.** *Brown*, 228 W.Va. at 669–70, 724 S.E.2d at 273–74.

**18.** Syllabus Point 7, *Brown, supra.*

averred by the plaintiff fall within the substantive scope of that arbitration agreement.[19]

Whether an arbitration agreement was validly formed, and whether the claims maintained by the plaintiff fall within the scope of the agreement, are evaluated under state law principles of contract formation.[20]

■■■■ The FAA permits a court to refuse enforcement of an arbitration agreement to the extent "such grounds ... exist at law or in equity for the revocation of any contract."[21] Nothing in the FAA "overrides normal rules of contract interpretation. Generally applicable contract defenses—such as laches, estoppel, waiver, fraud, duress, or unconscionability—may be applied to invalidate an arbitration agreement."[22]

■■■■ In *Brown v. Genesis Healthcare Corp.*, we noted that the United States Supreme Court has created the doctrine of "severability" to guide courts considering challenges to arbitration under the FAA. The doctrine of severability begins with the premise that "an arbitration provision is severable from the remainder of the contract."[23] "This doctrine is essentially a pleading standard" that holds that "only if a party explicitly challenges the enforceability of an arbitration clause within a contract is a court then permitted to consider challenges to the arbitration clause."[24]

The doctrine of severability means this: If a party challenges the enforceability of the entire contract (including the arbitration clause)—that is, the party does not sever the arbitration clause from the rest of the contract and make a "discrete challenge to the validity of the arbitration clause"—then the court is completely deprived of authority and only an arbitrator can assess the validity of the contract, including the validity of the arbitration clause.[25]

Richmond's argument (that under the doctrine of severability, a trial court can only consider language in the arbitration clause) is based on a misunderstanding of the FAA, and a misunderstanding of West Virginia's contract law used in determining whether a contract provision is unconscionable.

■■■■ The savings clause of Section 2 of the FAA says that a court may weigh the enforceability of an arbitration agreement under any "grounds as exist at law or in equity for the revocation of any contract."[26] Thus, when Congress enacted the savings clause, it preserved a trial court's ability to assay an arbitration agreement under each particular state's law of contracts.

■■■■ Furthermore, the law of this state—and virtually every other state—is that "[a]n analysis of whether a contract term is unconscionable necessarily involves an inquiry into the circumstances surrounding the execution of the contract and the fairness of the contract *as a whole.*"[27] The

19. Syllabus Point 2, *State ex rel. TD Ameritrade, Inc. v. Kaufman*, 225 W.Va. 250, 692 S.E.2d 293 (2010).

20. *See Brown*, 228 W.Va. at 673–74, 724 S.E.2d at 277–78.

21. 9 U.S.C. § 2.

22. Syllabus Point 9, *Brown*.

23. *Buckeye Check Cashing, Inc. v. Cardegna*, 546 U.S. 440, 445, 126 S.Ct. 1204, 163 L.Ed.2d 1038 (2006).

24. *Brown*, 228 W.Va. at 675, 724 S.E.2d at 279. *See also, Rent–A–Center, West, Inc. v. Jackson*, 561 U.S. ——, ——, 130 S.Ct. 2772, 2778, 177 L.Ed.2d 403, —— (2010) (Section 2 of the FAA "states that a 'written provision' 'to settle by arbitration a controversy' is 'valid, irrevocable, and enforceable' *without mention* of the validity of the contract in which it is contained. Thus, a party's challenge to another provision of the contract, or to the contract as a whole, does not

prevent a court from enforcing a specific agreement to arbitrate. '[A]s a matter of substantive federal arbitration law, an arbitration provision is severable from the remainder of the contract.' ").

25. *Brown*, 228 W.Va. at 675, 724 S.E.2d at 279 (footnotes omitted) (*citing Preston v. Ferrer*, 552 U.S. 346, 354, 128 S.Ct. 978, 169 L.Ed.2d 917 (2008); *Prima Paint Corp. v. Flood & Conklin Mfg. Co.*, 388 U.S. 395, 403–404, 87 S.Ct. 1801, 18 L.Ed.2d 1270 (1967); and *Buckeye Check Cashing*, 546 U.S. at 444–446, 126 S.Ct. 1204). *See also, Preston v. Ferrer*, 552 U.S. at 353, 128 S.Ct. 978 ("attacks on the validity of an entire contract, as distinct from attacks aimed at the arbitration clause, are within the arbitrator's ken.").

26. 9 U.S.C. § 2.

27. Syllabus Point 3, *Troy Mining Corp. v. Itmann Coal Co.*, 176 W.Va. 599, 346 S.E.2d 749 (1986) (emphasis added).

doctrine of unconscionability "consists primarily of equitable principles that have meaning only in the context of specific factual circumstances." [28] "The concept of unconscionability must be applied in a flexible manner, taking into consideration *all of the facts and circumstances of a particular case*." [29] "[T]he particular facts involved in each case are of utmost importance since certain conduct, contracts or contractual provisions may be unconscionable in some situations but not in others." [30]

Our state contract law requires a trial court examining the conscionability of an arbitration clause to weigh the fairness of the contract as a whole; all of the facts and circumstances particular to the entire contract must be taken into consideration. Section 2 of the FAA specifically *preserves* a trial court's ability to consider the enforceability of an arbitration provision under state contract law. Were we to adopt Richmond's position, we would have to nullify the savings clause in Section 2, and find meaningless Congress's mandate that a trial court apply general principles of state contract law to determine the validity of an arbitration provision. We would also be creating a special rule for interpreting the unconscionability of arbitration contracts—and the FAA explicitly preempts a "state-law principle that takes its meaning precisely from the fact that a contract to arbitrate is at issue[.]" [31] We therefore reject Richmond's argument.

■ We conclude that under the FAA and the doctrine of severability, only if a party to a contract explicitly challenges the enforceability of an arbitration clause within the contract, as opposed to generally challenging the contract as a whole, is a trial court permitted to consider the challenge to the arbitration clause. However, the trial court may rely on general principles of state contract law in determining the enforceability of the arbitration clause. If necessary, the trial court may consider the context of the arbitration clause within the four corners of the contract, or consider any extrinsic evidence detailing the formation and use of the contract.

Accordingly, the circuit court was correct, in interpreting the arbitration provision, to consider the Purchase Agreement as a whole, and was within its authority under the FAA to rely upon contract language and circumstances outside of the arbitration provision in its unconscionability analysis.

### B.

### Unconscionability of the Arbitration Provision

Richmond's second argument is that the circuit court erred in holding that the arbitration provision in the Purchase Agreement was unconscionable. Richmond reiterates that it was error for the circuit court to have weighed the arbitration provision (Section 21) in light of other provisions of the contract. But Richmond also generally asserts that the plaintiffs were savvy purchasers of expensive homes who had an opportunity to consult an attorney if they chose, and who willingly signed the Purchase Agreement and knowingly agreed to arbitrate any dispute they might have with Richmond. Under these circumstances, Richmond contends the arbitration provision cannot be construed to be unconscionable or unfair.

Furthermore, and more specifically, Richmond contends that the circuit court erred in finding a rebuttable presumption that the arbitration provision was unconscionable because of the "class action waiver" clause. Citing two cases decided after the circuit

---

28. *McMellon v. Adkins*, 171 W.Va. 475, 477, 300 S.E.2d 116, 118 (1983).

29. Syllabus Point 12, in part, *Brown v. Genesis Healthcare Corp.*, *supra* (emphasis added). *See also*, Syllabus Point 3, in part, *Board of Ed. of Berkeley County v. W. Harley Miller, Inc.*, 160 W.Va. 473, 236 S.E.2d 439 (1977) ("[W]here a party alleges that the arbitration provision was unconscionable, or was thrust upon him because he was unwary and taken advantage of, or that the contract was one of adhesion, the question of whether an arbitration provision was bargained for and valid is a matter of law for the court to determine by reference to the entire contract, the nature of the contracting parties, and the nature of the undertakings covered by the contract.").

30. Syllabus Point 2, in part, *Orlando v. Finance One of West Virginia, Inc.*, 179 W.Va. 447, 369 S.E.2d 882 (1988).

31. *Perry v. Thomas*, 482 U.S. 483, 492 n. 9, 107 S.Ct. 2520, 96 L.Ed.2d 426 (1987).

court's orders—this Court's decision in *State ex rel. AT & T Mobility, LLC v. Wilson,*[32] and the United States Supreme Court's decision in *AT & T Mobility LLC v. Concepcion,*[33]—Richmond argues that the FAA preempts any effort by a state court to automatically invalidate an arbitration provision that contains a class action waiver.

We believe that the circuit court was correct in finding that the arbitration provision was unconscionable, and as we discuss below, there is an abundance of reasons to support the circuit court's determination. The circuit court did err in its interpretation of the class action waiver, by ruling that the existence of a class action waiver in an arbitration provision suggests the provision is *automatically* or *presumptively* unconscionable. However, when removed from the circuit court's analysis, it is clear that numerous other factors considered by the circuit court render the arbitration provision unenforceable.

■ We begin our unconscionability analysis with *Brown v. Genesis Healthcare Corp.,* where we said that the "doctrine of unconscionability means that, because of an overall and gross imbalance, one-sidedness or lop-sidedness in a contract, a court may be justified in refusing to enforce the contract as written."[34] "Unconscionability is an equitable principle, and the determination of whether a contract or a provision therein is unconscionable should be made by the court."[35] "If a court, as a matter of law, finds a contract or any clause of a contract to be unconscionable, the court may refuse to enforce the contract, enforce the remainder of the contract without the unconscionable clause, or limit the application of any unconscionable clause to avoid any unconscionable result."[36]

"Under West Virginia law, we analyze unconscionability in terms of two component parts: procedural unconscionability and substantive unconscionability."[37] "Procedural

and substantive unconscionability often occur together, and the line between the two concepts is often blurred. For instance, overwhelming bargaining strength against an inexperienced party (procedural unconscionability) may result in an adhesive form contract with terms that are commercially unreasonable (substantive unconscionability)."[38]

■ "A contract term is unenforceable if it is both procedurally and substantively unconscionable. However, both need not be present to the same degree. Courts should apply a 'sliding scale' in making this determination: the more substantively oppressive the contract term, the less evidence of procedural unconscionability is required to come to the conclusion that the clause is unenforceable, and vice versa."[39]

We set forth the following guidelines for determining procedural unconscionability in Syllabus Point 17 of *Brown:*

Procedural unconscionability is concerned with inequities, improprieties, or unfairness in the bargaining process and formation of the contract. Procedural unconscionability involves a variety of inadequacies that results in the lack of a real and voluntary meeting of the minds of the parties, considering all the circumstances surrounding the transaction. These inadequacies include, but are not limited to, the age, literacy, or lack of sophistication of a party; hidden or unduly complex contract terms; the adhesive nature of the contract; and the manner and setting in which the contract was formed, including whether each party had a reasonable opportunity to understand the terms of the contract.

"Considering factors such as these, courts are more likely to find unconscionability in consumer transactions and employment agreements than in contracts arising in pure-

---

**32.** 226 W.Va. 572, 703 S.E.2d 543 (2010) (*per curiam*).

**33.** 563 U.S. ——, 131 S.Ct. 1740, 179 L.Ed.2d 742 (2011).

**34.** Syllabus Point 12, in part, *Brown, supra.*

**35.** Syllabus Point 1, *Troy Mining Corp. v. Itmann Coal Co.,* 176 W.Va. 599, 346 S.E.2d 749 (1986).

**36.** Syllabus Point 16, *Brown, supra.*

**37.** *Brown,* 228 W.Va. at 681, 724 S.E.2d at 285.

**38.** *Brown,* 228 W.Va. at 684, 724 S.E.2d at 289.

**39.** Syllabus Point 20, *Brown, supra.*

ly commercial settings involving experienced parties." [40]

■ Procedural unconscionability often begins with a contract of adhesion.

A contract of adhesion is one drafted and imposed by a party of superior strength that leaves the subscribing party little or no opportunity to alter the substantive terms, and only the opportunity to adhere to the contract or reject it. A contract of adhesion should receive greater scrutiny than a contract with bargained-for terms to determine if it imposes terms that are oppressive, unconscionable or beyond the reasonable expectations of an ordinary person.[41]

As we recognized in State ex rel. Dunlap v. Berger, "[f]inding that there is an adhesion contract is the beginning point for analysis, not the end of it; what courts aim at doing is distinguishing good adhesion contracts which should be enforced from bad adhesion contracts which should not." [42]

■ We offered guidelines for analyzing substantive unconscionability in Syllabus Point 19 of Brown:

Substantive unconscionability involves unfairness in the contract itself and whether a contract term is one-sided and will have an overly harsh effect on the disadvantaged party. The factors to be weighed in assessing substantive unconscionability vary with the content of the agreement. Generally, courts should consider the commercial reasonableness of the contract terms, the purpose and effect of the terms, the allocation of the risks between the parties, and public policy concerns.

"Some courts suggest that mutuality of obligation is the locus around which substantive unconscionability analysis revolves." [43] "In assessing substantive unconscionability, the paramount consideration is mutuality." [44] "Agreements to arbitrate must contain at least 'a modicum of bilaterality' to avoid unconscionability." [45]

■ If an agreement to arbitrate imposes high costs that might deter a litigant from pursuing a claim, a trial court may consider those costs in assessing whether the agreement is substantively unconscionable. As the Supreme Court recognized, "[t]he existence of large arbitration costs could preclude a litigant ... from effectively vindicating her ... rights in the arbitral forum." [46] "[I]t is not only the costs imposed on the claimant but the risk that the claimant may have to bear substantial costs that deters the exercise of the constitutional right of due process." [47] In Syllabus Point 4 of State ex rel. Dunlap v. Berger,[48] we held that a trial court could consider those high costs in its unconscionability analysis:

Provisions in a contract of adhesion that if applied would impose unreasonably burdensome costs upon or would have a substantial deterrent effect upon a person seeking to enforce and vindicate rights and protections or to obtain statutory or common-law relief and remedies that are afforded by or arise under state law that exists for the benefit and protection of the public, are unconscionable; unless the court determines that exceptional circumstances exist that make the provisions conscionable. In any challenge to such a provision, the responsibility of showing the costs likely to be imposed by the applica-

40. Brown, 228 W.Va. at 681, 724 S.E.2d at 285.

41. Syllabus Point 18, Brown.

42. State ex rel. Dunlap v. Berger, 211 W.Va. 549, 557, 567 S.E.2d 265, 273 (2002) (quoting American Food Management, Inc. v. Henson, 105 Ill. App.3d 141, 145, 61 Ill.Dec. 122, 434 N.E.2d 59, 62–63 (1982)), cert denied, 537 U.S. 1087, 123 S.Ct. 695, 154 L.Ed.2d 631 (2002).

43. Brown, 228 W.Va. at 683, 724 S.E.2d at 287.

44. Abramson v. Juniper Networks, Inc., 115 Cal. App.4th 638, 664, 9 Cal.Rptr.3d 422, 442 (2004).

45. Id., 115 Cal.App.4th at 657, 9 Cal.Rptr.3d at 437 (2004).

46. Green Tree Financial Corp.–Alabama v. Randolph, 531 U.S. 79, 90, 121 S.Ct. 513, 148 L.Ed.2d 373 (2000).

47. Armendariz v. Foundation Health Psychcare Services, Inc., 24 Cal.4th 83, 110, 99 Cal.Rptr.2d 745, 6 P.3d 669, 687 (2000).

48. State ex rel. Dunlap v. Berger, 211 W.Va. 549, 567 S.E.2d 265 (2002).

tion of such a provision is upon the party challenging the provision; the issue of whether the costs would impose an unconscionably impermissible burden or deterrent is for the court.

 We have examined the circuit court's detailed orders and—with the exception of the ruling on the class action waiver—we find the circuit court's conclusion that Richmond's arbitration provision is unconscionable is supported by the record. Taking into consideration all of the facts and circumstances of the case, the circuit court found a lack of a real and voluntary meeting of the minds, and an overall imbalance and one-sidedness to Richmond's arbitration provision, that precludes its enforcement.

The circuit court found procedural unconscionability began with the fact that Richmond's arbitration provision was a non-negotiable term in an adhesion contract, and the plaintiffs were not permitted to "opt-out" or alter the provision. Additionally, the circuit court found it was "not credible" for Richmond to argue that the signatory plaintiffs had the same level of sophistication or understanding about the arbitration clause as Richmond and its attorneys who drafted the language. Richmond is a national corporation that routinely builds and sells new houses, with full-time legal counsel advising it in the drafting of form Purchase Agreements; for the plaintiffs, a new home purchase is a rare event. Furthermore, Richmond hired the lawyer who advised the plaintiffs when they signed the Agreement; Richmond apparently said it would charge an additional $7,500.00 per house if the plaintiffs used a lawyer of their own choosing. On facts such as these, the circuit court found each plaintiff's "competitive bargaining power as against the multi-million dollar national corporation" was negligible.

The circuit court found substantive unconscionability because the arbitration process established by the Purchase Agreement was unduly oppressive in that it exculpated Richmond from its misconduct, and substantially impaired the plaintiffs' right to pursue remedies for their losses. Richmond's Purchase Agreement collectively created an arbitration process that either implicitly or explicitly limited the ability of the plaintiffs to fairly pursue remedies for their injuries and damages caused by radon gas in their new homes. For instance, the Agreement explicitly states that Richmond "disclaims liability, and [Plaintiff] expressly waives any and all claims for property and/or personal injury or other economic loss resulting from … radon gas[.]" The Agreement also says that Richmond is not "liable for any special, indirect or consequential damages," which the circuit court found would exculpate Richmond from damages for pain and suffering, intentional and negligent infliction of emotional distress, and punitive damages. The Agreement also says Richmond is not liable for diminution in the value of the home as a result of its misconduct. Further, the Agreement categorically attempts to eliminate various statutory and common law rights, including the plaintiffs' warranties under the Magnuson-Moss Act and "all warranties of fitness, merchantability and habitability."

The circuit court found that "all of the subject provisions either implicitly or explicitly limited the [plaintiffs'] ability to seek compensatory damages for property damage and bodily injury" and "limited the [plaintiffs'] ability to seek punitive damages to redress and punish misconduct." The circuit court also found that the agreement "improperly relieved [Richmond] from liability for the breach of the implied warranty of habitability"—particularly when this Court explicitly said over 30 years ago that a "[w]aiver of the implied warranty of habitability is prohibited as against public policy." [49] The circuit court concluded that these terms established an arbitration process that lacked any modicum of bilaterality or mutuality—it limited the plaintiffs' rights and not Richmond's.

Additionally, citing to State ex rel. Dunlap v. Berger, the circuit court recognized that the mere fact that Richmond's arbitration provision was prominent and specifically initialed by a signatory plaintiff does not mitigate its unconscionable effect:

> [R]eliance on a "written warning" misses the point. The legal enforceability vel non of exculpatory provisions in contracts of adhesion has little to do with whether there are self-serving caveats in a docu-

49. Syllabus Point 7, Teller v. McCoy, 162 W.Va. 367, 253 S.E.2d 114 (1978).

ment that is not going to be read, and everything to do with whether the provisions would operate to deprive people of important rights and protections that the law secures for them.[50]

While we agree with most of the circuit court's ruling, we are troubled by the circuit court's interpretation of the class action waiver. Class actions are not remotely related to mass tort lawsuits or the consolidation of individual lawsuits for trial. These type of lawsuits do not have a class representative who pursues the lawsuit on behalf of persons who are not a party to the lawsuit. A class action waiver, if valid, would not prevent the consolidation of individual cases for trial under Rule 42.[51]

The circuit court appears to have concluded that Richmond's inclusion of the class action waiver created a "rebuttable presumption" that the entire arbitration provision was unconscionable and unenforceable. The circuit court found that the class action bar in Richmond's agreement would, if applied, "effectively limit [Richmond's] legal exposure, accountability, and liability in a fashion that would not otherwise exist under West Virginia law" and was therefore presumptively "unconscionable and void."

▉ This Court addressed a similar situation in *State ex rel. AT & T Mobility, LLC v. Wilson*[52] (a decision issued in October 2010, after the circuit court's orders in the instant case). In *AT & T Mobility*, the trial

court examined an arbitration clause that barred class action proceedings, and determined that *State ex rel. Dunlap v. Berger* required an "across the board" ruling of unconscionability if an arbitration contract barred class wide arbitration.[53] The trial court found that it could not "rule in favor of arbitration without contravening the law set forth in *Dunlap*."[54] We set aside the trial court's ruling, saying that while *Dunlap* "was clearly an expansion of our jurisprudence, that decision did not alter the legal underpinnings necessary to establish unconscionability."[55] Specifically, we found that *Dunlap* did not alter the long-standing rule that "determinations of unconscionability must be made on a 'case-by-case basis.'"[56] "[E]very case in which the issue of an unconscionable adhesion contract is raised must be examined on the basis of the language of that particular contract in conjunction with the specific facts surrounding the dispute."[57]

We concluded in *AT & T Mobility* that the trial court had erred by interpreting *Dunlap* as rendering arbitration agreements with a class action waiver to be unconscionable *per se*. We required the trial court to perform a "meaningful analysis" of the arbitration agreement in light of our test of contract unconscionability.

The United States Supreme Court later reached a similar conclusion in *AT & T Mobility LLC v. Concepcion*.[58] In *Concepcion*, the Supreme Court examined a California rule that, in certain circumstances,[59] auto-

---

50. *State ex rel. Dunlap v. Berger,* 211 W.Va. at 560 n. 6, 567 S.E.2d at 276 n. 6.

51. *See supra,* footnote 10.

52. *State ex rel. AT & T Mobility, LLC v. Wilson,* 226 W.Va. 572, 703 S.E.2d 543 (2010) (*per curiam*).

53. 226 W.Va. at 577, 703 S.E.2d at 548.

54. 226 W.Va. at 576, 703 S.E.2d at 547.

55. 226 W.Va. at 578, 703 S.E.2d at 549.

56. 226 W.Va. at 577, 703 S.E.2d at 548 (*quoting Dunlap,* 211 W.Va. at 560 n. 5, 567 S.E.2d at 275 n. 5).

57. *AT & T Mobility,* 226 W.Va. at 578, 703 S.E.2d at 549.

58. *AT & T Mobility LLC v. Concepcion,* 563 U.S. ——, 131 S.Ct. 1740, 179 L.Ed.2d 742 (2011).

59. The Supreme Court noted that the California rule only applied to class action waivers in limited circumstances:

> [W]hen the waiver is found in a consumer contract of adhesion in a setting in which disputes between the contracting parties predictably involve small amounts of damages, and when it is alleged that the party with the superior bargaining power has carried out a scheme to deliberately cheat large numbers of consumers out of individually small sums of money, then ... the waiver becomes in practice the exemption of the party 'from responsibility for [its] own fraud, or willful injury to the person or property of another.' Under these circumstances, such waivers are unconscionable under California law and should not be enforced.

*Concepcion,* 563 U.S. at —— ——, 131 S.Ct. 1740 (*quoting Discover Bank v. Superior Court,* 36

matically invalidated an arbitration clause if it contained a class action waiver. The Supreme Court concluded that such a *per se* rule abrogating arbitration clauses impairs the rights of parties to contract and, if they so choose, arbitrate rather than litigate a particular dispute. The California rule was therefore found to be preempted by the FAA.

■ In the case at bar, we believe that the circuit court erred in its finding that the class action waiver rendered Richmond's arbitration provision unconscionable and void. However, we do not believe that this error was a substantial or controlling finding that prejudiced Richmond's case. Removing this error from the equation, the circuit court's other findings still firmly establish an overall imbalance and unfairness of the arbitration process created by Richmond's Purchase Agreement, such that the arbitration provision is unconscionable and unenforceable.

### C.

#### *Ambiguity*

Richmond's next argument concerns the circuit court's finding that the arbitration provision—contained in Section 21 of the Purchase Agreement—was ambiguous. The circuit court found that Section 21 made reference "to court action five (5) times," creating an ambiguity suggesting that the plaintiffs retained their ability to vindicate their claims in court. The circuit court therefore construed the language against Richmond, and in favor of the plaintiffs' right to pursue their claims in court.

Section 21, entitled "Mediation and Arbitration," has two subsections, the first pertaining to "Mediation of Disputes," the second to "Arbitration of Disputes." Before the circuit court, Richmond asserted that the two parts of Section 21 were "part and parcel" of each other and, "as such, the two provisions should be considered as one." On appeal to

this Court, Richmond asserts that both parts of Section 21 should be read independently of the other, and asserts that read alone neither part is ambiguous. Richmond therefore argues that the plaintiffs unequivocally and unambiguously agreed to arbitrate their claims. We disagree.

■ Whether a contract is ambiguous is a question of law reviewable by this Court *de novo.*[60] We have examined Section 21 of Richmond's Purchase Agreement and the circuit court's interpretation of that section, and the circuit court's finding of ambiguity was correct. Section 21 states that the parties must (1) seek to mediate their claims "before resorting to … court action;" (2) must sign a document limiting the admissibility in "any civil action" of any statements or evidence used in mediation; and (3) says that if a party "commences an arbitration or court action" without first seeking mediation, then (4) "in the discretion of the … judge," the party cannot recover attorney fees even if they would otherwise be available (5) "in any such … court action." The paragraph plainly intimates at least five times that a plaintiff retains the right to bring a civil action in a courtroom before a judge, and absolutely muddles the language that follows stating that the plaintiff is barred from bringing a civil action and must only pursue a remedy before an arbitrator. The circuit court therefore correctly found that the language creates an ambiguity in the arbitration provision that, pursuant to well-settled West Virginia contract law,[61] must be construed against the drafting party, Richmond.

### IV.

#### *Conclusion*

We have carefully reviewed the orders of the circuit court, and we believe that the

---

Cal.4th 148, 162, 30 Cal.Rptr.3d 76, 113 P.3d 1100, 1110 (2005)).

**60.** *See, e.g.,* Syllabus Point 1, in part, *Berkeley Co. Pub. Ser. Dist. v. Vitro Corp. of America,* 152 W.Va. 252, 162 S.E.2d 189 (1968) ("The question as to whether a contract is ambiguous is a question of law to be determined by the court."); *Williams v. Precision Coil, Inc.,* 194 W.Va. 52, 65

n. 23, 459 S.E.2d 329, 342 n. 23 (1995) ("Whether a contract is ambiguous is a legal question reviewable by this Court *de novo."*).

**61.** *See, e.g.,* Syllabus Point 3, *Auber v. Jellen,* 196 W.Va. 168, 469 S.E.2d 104 (1996) (holding that ambiguous contract provisions, "especially those having the qualities of a contract of adhesion," are to be construed against the drafter).

circuit court's decision was correct. The arbitration provision in Richmond's Purchase Agreement is unquestionably unconscionable and ambiguous. The circuit court was therefore within its authority to refuse to enforce the arbitration clause against the plaintiffs.

Writ Denied.