729 S.E.2d 217

Clayton BROWN, as guardian for and on behalf of Clarence Brown, Petitioner

v.

GENESIS HEALTHCARE CORPORATION; Genesis Healthcare Holding Company II, Inc.; Genesis Health Ventures, Inc. of West Virginia; Genesis Eldercare Corporation; Genesis Eldercare Network Services, Inc.; Genesis Eldercare Management Services, Inc.; Genesis Eldercare Rehabilitation Services, Inc.; Genesis Eldercare Staffing Services, Inc.; Genesis Eldercare Hospitality Services, Inc.; Marmet SNF Operations, LLC; 1 Sutphin Drive Associates, LLC; 1 Sutphin Drive Operations, LLC; Genesis WV Holdings, LLC; Glenmark Associates, Inc.; Marmet Health Care Center, Inc. n/k/a MHCC, Inc.; Canoe Hollow Properties, LLC; Robin Sutphin; and Shawn Eddy, Respondents.

Jeffrey Taylor, personal representative of the Estate of Leo Taylor, Petitioner

v.

MHCC, Inc., f/k/a Marmet Health Care Center; Canoe Hollow Properties, LLC; Genesis Healthcare Corporation d/b/a Marmet Health Care Center; Glenmark Associates, Inc.; Glenmark Limited Liability Company I; Glenmark Properties, Inc.; Genesis Healthcare Corporation; Genesis Health Ventures of West Virginia, Inc.; Genesis Health Ventures of West Virginia, LP; Genesis Eldercare Corporation; Genesis Eldercare Network Services, Inc.; Genesis Eldercare Management Services, Inc.; Genesis Eldercare Rehabilitation Services, Inc.; Genesis Eldercare Staffing Services, Inc.; Genesis Eldercare Physician Services, Inc.; Genesis Eldercare Hospitality Services, Inc.; Horizon Associates, Inc.; Horizon Mobile, Inc.; Horizon Rehabilitation, Inc.; GMA Partnership

Holding Company, Inc.; GMA–Madison, Inc.; GMA–Brightwood, Inc.; Helstat, Inc.; Formation Capital, Inc.; FC–GEN Acquisition, Inc.; Gen Acquisition Corporation; and JER Partners, LLC, Respondents

Sharon A. Marchio, Executrix of the Estate of Pauline Virginia Willett, Petitioner

v.

Clarksburg Nursing & Rehabilitation Center, Inc., a West Virginia Corporation, d/b/a Clarksburg Continuous Care Center; Sheila K. Clark, Executive Director of Clarksburg Nursing & Rehabilitation Center, Inc., d/b/a Clarksburg Continuous Care Center; John/Jane Doe # 1; and Jennifer McWhorter, Respondents.

Nos. 35494, 35546, 35635.

Supreme Court of Appeals of West Virginia.

Submitted June 6, 2012.

Decided June 13, 2012.

James B. McHugh, Esq., Michael J. Fuller, Esq., D. Bryant Chaffin, Esq., McHugh Fuller Law Group, PLLC, Hattiesburg, MI, Harry G. Deitzler, Esq., Hill, Peterson, Carper, Bee, & Deitzler, PLLC, Charleston, WV, for Petitioner Clayton Brown.

Andrew L. Paternostro, Esq., Jeff D. Stewart, Esq., The Bell Law Firm, PLLC, Charleston, WV, Attorneys for Petitioner Jeffrey Taylor.

Frank E. Simmerman, Jr., Esq., Chad L. Taylor, Esq., Simmerman Law Office, PLLC, Clarksburg, WV, Attorneys for Petitioner Sharon A. Marchio.

Shawn P. George, Esq., George & Lorensen PLLC, Charleston, WV, Attorney for Respondents Marmet Health Care Center, Inc., Canoe Hollow Properties, LLC, and Robin Sutphin.

Mark A. Robinson, Esq., Ryan Brown, Esq., Justin D. Jack, Esq., Flaherty Sensabaugh Bonasso PLLC, Charleston, WV, Attorneys for Respondents Clarksburg Nursing & Rehabilitation Center, Inc., Sheila K. Clark, John/Jane Doe # 1, and Jennifer McWhorter.

Christopher J. Regan, Esq., Bordas & Bordas, PLLC, Wheeling, WV, Attorney for Amicus Curiae West Virginia Association for Justice.

Ancil G. Ramey, Esq., Steptoe & Johnson, PLLC, Charleston, WV, Attorney for Amicus Curiae West Virginia Health Care Association.

Elizabeth S. Lawton, Esq., Shuman, McCuskey & Slicer, PLLC, Charleston, WV, Marc James Ayers, Esq., Christopher C. Puri, Esq., Bradley Arant Boult Cummings LLP, Birmingham, AL, Attorneys for Amicus Curiae American Health Care Association.

KETCHUM, Chief Justice:

The instant case is a consolidation of three separate wrongful death lawsuits. The case was previously before this Court, and in June 2011, we issued an opinion: *"Brown I."* [1] Each lawsuit arose from a nursing home's attempt to compel a plaintiff to participate in arbitration, pursuant to a clause in a nursing home admission contract. Our opinion discussed the common law doctrine of unconscionability, and found one section of the West Virginia Nursing Home Act—which, in part, prohibited arbitration clauses in nursing home contracts—was preempted by the Federal Arbitration Act ("the FAA"). In two of the three cases, we ruled that the arbitration clauses were unconscionable and unenforceable. In the third case, we answered a certified question and held that the Nursing Home Act could not be relied upon to bar enforcement of an arbitration clause in a nursing home contract.

The defendant nursing homes in all three cases sought review of our opinion in the United States Supreme Court. The defendants specifically challenged Syllabus Point 21 of our opinion, in which we questioned whether the FAA applies to personal injury or wrongful death actions. In a *per curiam* opinion, the Supreme Court found Syllabus Point 21 to be "both incorrect and inconsistent with clear instruction in the precedents of this Court," [2] and reversed our opinion. The Supreme Court's opinion did not discuss any other portion of *Brown I*, aside from Syllabus Point 21 and its accompanying text. The cases were remanded to this Court to consider whether the arbitration clauses at issue "are unenforceable under state common law principles that are not specific to arbitration and pre-empted by the FAA." [3]

We have carefully examined the record developed in the courts below, and the briefs and arguments of the parties. In accordance

1. *Brown v. Genesis Healthcare Corporation,* 228 W.Va. 646, 724 S.E.2d 250 (2011).

2. *Marmet Health Care Center, Inc. v. Brown,* 565 U.S. ——, ——, 132 S.Ct. 1201, 1203, 182 L.Ed.2d 42 (2012).

3. *Id.,* 565 U.S. at ——, 132 S.Ct. at 1204.

with the Supreme Court's mandate, we overrule Syllabus Point 21 of *Brown I*. We otherwise find that the Supreme Court's decision does not counsel us to alter our original analysis of West Virginia's common law of contracts. The doctrine of unconscionability that we explicated in *Brown I* is a general, state, common-law, contract-law principle that is not specific to arbitration, and does not implicate the FAA. In two of the cases on appeal, we reverse the trial courts' prior orders compelling arbitration, and permit the parties to raise and develop their arguments regarding unconscionability anew before the trial court. In the third case, the issue of unconscionability was not considered by the trial court, but may be raised by the parties on remand.

## I. *Factual Background*

We do not need to give a comprehensive recitation of the facts of the three cases before the Court, as this was done in *Brown I*.[4] Generally, in each of the three cases, a family member of a patient who had died sued a nursing home in circuit court, alleging that the nursing home's negligence had caused injuries to the patient resulting in death. Plaintiff Clayton Brown and plaintiff Jeffrey Taylor each brought suits against defendant Marmet Health Care Center; plaintiff Sharon Marchio brought suit against defendant Clarksburg Nursing Home & Rehabilitation Center.

The defendant nursing homes asserted before the circuit courts that a family member of each patient had signed an admission agreement with the nursing home on behalf of the patient. Each admission agreement included a clause requiring the plaintiffs to arbitrate any disputes that may arise with the defendant nursing homes. The defendants insisted that the circuit courts were obligated to dismiss the plaintiffs' suits and refer their claims to binding arbitration.

In an order dated August 25, 2009, the Circuit Court of Kanawha County dismissed plaintiff Clayton Brown's suit against Marmet Health Care Center (and its manager, defendant Robin Sutphin). The plaintiff had argued that the arbitration clause[5] was unenforceable because it violated Section 15(c) of the Nursing Home Act,[6] and because it was an unconscionable contract of adhesion. The circuit court disagreed and ruled that under the admission agreement signed with the nursing home, plaintiff Brown was required to arbitrate all of his claims.[7] The plaintiff appealed.

In an order dated September 29, 2009, the Circuit Court of Kanawha County dismissed

---

**4.** *Brown I*, 228 W.Va. at 659–663, 724 S.E.2d at 263–267.

**5.** The entire text of the arbitration clause is appended to our opinion in *Brown I*. See Appendix 1, *Brown I*, 228 W.Va. at 693–694, 724 S.E.2d at 297–298.

**6.** The disputed portion of the Nursing Home Act, Section 15(c) (*W.Va.Code*, 16–5C–15(c) [1997]) says:

> Any waiver by a resident or his or her legal representative of the right to commence an action under this section, whether oral or in writing, shall be null and void as contrary to public policy.

**7.** The circuit court's August 25, 2009, order is one paragraph long. The circuit court determined plaintiff Brown was required to arbitration his claims "after hearing argument of counsel, reviewing the respective briefs and the record[.]" As we said in *Brown I*, 228 W.Va. at 689, 724 S.E.2d at 293 (citations omitted),

> Although our standard of review remains *de novo*, a circuit court's order dismissing a case must set out factual findings sufficient to permit meaningful appellate review. Findings of fact, by necessity, include those facts which the circuit court finds relevant, determinative of the issues and undisputed. Without factual or legal findings, this Court is greatly at sea without a chart or compass in making a determination as to whether the circuit court's decision was right or wrong.

We held in *Brown I*—and we hold again in the instant case—that because the circuit court failed to offer any substance to permit a meaningful review of the court's decision, for that reason alone, the circuit court's order must be reversed.

Likewise, in a separate order, issued May 15, 2009, the circuit court dismissed plaintiff Brown's claims against another defendant, Canoe Hollow Properties, LLC, giving as its only reason "the Motion, Briefs, record and arguments of counsel." In *Brown I*, we found the circuit court's May 15, 2009, order was clearly in error. Our finding regarding Canoe Hollow was not appealed to the Supreme Court. Accordingly, on remand, the circuit court shall give proper consideration to the parties' assertions regarding Canoe Hollow. *See Brown I*, 228 W.Va. at 690–691, 724 S.E.2d at 294–295.

plaintiff Jeffrey Taylor's suit against various owners, operators and employees of Marmet Health Care Center. Plaintiff Taylor had asserted that the arbitration clause[8] violated Section 15(c) and was an unconscionable contract of adhesion. The circuit court concluded that under the admission agreement, plaintiff Taylor was required to arbitrate all of the claims asserted against the nursing home. The plaintiff appealed.

Finally, in an order dated June 2, 2010, the Circuit Court of Harrison County refused to dismiss or compel arbitration of plaintiff Sharon Marchio's suit against various owners and employees of Clarksburg Nursing Home & Rehabilitation Center. Instead, the circuit court certified a question to this Court because plaintiff Marchio argued that the arbitration clause[9] was unenforceable under Section 15(c). The circuit court asked this Court to determine whether Section 15(c) was preempted by the FAA.

## II. *Brown I and the U.S. Supreme Court*

On June 29, 2011, we issued *Brown I*, an extensive opinion with three holdings.

■ First, in *Brown I* we considered whether Section 15(c) of the Nursing Home Act was preempted by federal law. Section 15(c) of the Act explicitly prohibits "any waiver by a [nursing home] resident or his or her legal representative of the right to commence an action," declaring that such waivers are "null and void as contrary to public policy."[10] However, "[u]nder the Federal Arbitration Act, 9 U.S.C. § 2, a written provision to settle by arbitration a controversy arising out of a contract that evidences a transaction affecting interstate commerce is valid, irrevocable, and enforceable, unless the provision is found to be invalid, revocable or unenforceable upon a ground that exists at

law or in equity for the revocation of any contract."[11]

We noted in *Brown I* that "[a] state statute, rule, or common-law doctrine, which targets arbitration provisions for disfavored treatment and which is not usually applied to other types of contract provisions, stands as an obstacle to the accomplishment and execution of the purposes and objectives of the Federal Arbitration Act, 9 U.S.C. § 2, and is preempted."[12] Accordingly, we found in Syllabus Point 11 that to the extent that Section 15(c) "attempts to nullify and void any arbitration clause in a written contract, which evidences a transaction affecting interstate commerce, between a nursing home and a nursing home resident or the resident's legal representative, the statute is preempted by the Federal Arbitration Act, 9 U.S.C. § 2."[13]

The parties have not challenged our holding in Syllabus Point 11 of *Brown I* regarding the preemption of Section 15(c) by Section 2 of the FAA, and we need not revisit it.

The second holding in *Brown I* is found in Syllabus Point 21, and concerns agreements to arbitrate negligence claims entered in to *before* negligence has occurred. The text of the FAA and the congressional history at the time of its adoption in 1925 suggest that the FAA was intended to reverse judicial hostility to arbitration. The FAA was designed to allow commercial entities engaged in interstate commerce to enter into arbitration agreements that would be enforced nationwide. We examined the recent U.S. Supreme Court interpretations of the FAA, and noted that much of the Supreme Court's reasoning was "tendentious"[14] and intended to promote a particular point of view—namely that arbitration is a panacea for all the

---

8. The arbitration clause is the same as that in the Brown case. *See* Appendix 1, *Brown I*, 228 W.Va. at 693–694, 724 S.E.2d at 297–298.

9. The entire text of the Clarksburg Nursing & Rehabilitation Center arbitration clause is appended to our opinion in *Brown I*. See Appendix 2, *Brown I*, 228 W.Va. at 694–695, 724 S.E.2d at 298–299.

10. *W.Va.Code*, 16–5C–15(c) [1997].

11. Syllabus Point 6, *Brown I*.

12. Syllabus Point 8, *Brown I*.

13. Syllabus Point 11, *Brown I*.

14. *Brown I*, 228 W.Va. at 674, 724 S.E.2d at 278 ("With tendentious reasoning, the United States Supreme Court has stretched the application of the FAA from being a *procedural* statutory scheme effective only in the federal courts, to being a *substantive* law that preempts state law in both the federal *and* state courts.")

woes of litigation and should therefore be given special favor. We found, however, that the Supreme Court had never extended the FAA to arbitration agreements like those in the instant cases. We therefore held in Syllabus 21 that:

> Congress did not intend for arbitration agreements, adopted prior to an occurrence of negligence that results in a personal injury or wrongful death, and which require questions about the negligence be submitted to arbitration, to be governed by the Federal Arbitration Act.[15]

We then went on to find that, "as a matter of public policy under West Virginia law, an arbitration clause in a nursing home admission agreement adopted prior to an occurrence of negligence that results in a personal injury or wrongful death, shall not be enforced to compel arbitration of a dispute concerning the negligence."[16] It is this holding that the defendants appealed to the U.S. Supreme Court.

The Supreme Court—without elucidating how and why the FAA applies to negligence actions that arise subsequently and only incidentally to a contract containing an arbitration clause—summarily concluded that the above holding in *Brown I* is a categorical rule that "is contrary to the terms and coverage of the FAA."[17] The Supreme Court therefore reversed the above holding. To clarify future application of *Brown I*, and in accordance with the Supreme Court's limited ruling, we hold that Syllabus Point 21 of *Brown I* is overruled.

The Supreme Court remanded the cases to this Court for reconsideration under the third significant holding of *Brown I*: the doctrine of unconscionability. In *Brown I*, we assembled comprehensive, general rules for assessing whether a contract is unconscionable. We then went on to conclude that two of the arbitration contracts—in Brown's case and Taylor's case—were unconscionable (and said that on remand of Marchio's case, the parties were free to challenge the unconscionability of the third arbitration contract).

In reversing *Brown I*, the Supreme Court ordered us to "consider whether, absent [Syllabus Point 21 and] that general public policy, the arbitration clauses in Brown's case and Taylor's case are unenforceable under state common law principles that are not specific to arbitration and pre-empted by the FAA."[18]

In an order dated April 3, 2012, we ordered the parties to submit additional briefs and arguments. To reiterate, we now overrule Syllabus Point 21 (and its accompanying text concerning a general public policy) of our prior opinion. As we discuss below, we otherwise reaffirm all of our discussion and holdings in *Brown I*.

However, in light of the parties' additional briefs and arguments, we modify our conclusions in *Brown I*. At oral argument on the rehearing of this case, counsel for the plaintiffs asserted—because the trial courts did not permit the parties to develop evidence on the question of unconscionability—that this Court should firmly establish that when the enforceability of an arbitration clause is challenged, the parties absolutely have a right to conduct discovery. In a similar vein, counsel for Marmet Health Care Center contends our decision in *Brown I* was wrong because there was insufficient evidence in the record to support a finding that the arbitration clause was unconscionable.

After a thorough re-examination of the record, we reverse the circuit courts' orders in Brown's case and Taylor's case. The circuit court's order in Brown's case is devoid of any findings of fact or conclusions of law on the question of unconscionability. The circuit court's order in Taylor's case has some findings of fact, but the circuit court has not had the opportunity to comprehensively analyze the question of unconscionability under the guidelines we developed in *Brown I*. We conclude the correct course is to remand these cases to the circuit courts for the taking of evidence, the full development of a

---

15. Syllabus Point 21, *Brown I*.

16. *Brown I*, 228 W.Va. at 688, 724 S.E.2d at 292.

17. *Marmet Health Care Center*, 563 U.S. at ——, 132 S.Ct. at 1204.

18. *Id.*, 563 U.S. at ——, 132 S.Ct. at 1204.

record, and proper consideration of whether the clauses are unconscionable.

### III.  *Discussion*

"This Court is conscious of the 'ancient judicial hostility to arbitration' that the FAA was intended to correct, and the courts of this State are not hostile to arbitration or to adhesion contracts.  We are hostile toward contracts of adhesion that are unconscionable and rely upon arbitration as an artifice to defraud a weaker party of rights clearly provided by the common law or statute." [19]

We observed at length in *Brown I* that, "[t]he process of signing paperwork for medical care—specifically, a contract for admission to a nursing home—is often fraught with urgency, confusion, and stress." [20]  People seek medical care in a nursing home for long-term treatment to heal, and do so only a few times in life.  Nursing homes daily sign contracts with patients as a routine course of doing business.  Most patients do not view "the admission process as an interstate commercial transaction with far-reaching legal consequences." [21]  Many contracts for admission are signed by a patient or family member in a tense and bewildering setting.  It may be disingenuous for a nursing home to later assert that the patient or family member consciously, knowingly and deliberately accepted an arbitration clause in the contract, and understood the clause was intended to eliminate their access to the courts if the nursing home negligently injured or killed the patient.

In *Brown I*, we assembled an extensive set of common law factors for courts to weigh in assaying whether a contract, or a particular term or clause within a contract, is unconscionable.  Neither the defendants' briefs nor the Supreme Court's opinion assault these well-established common-law guides concerning unconscionability, but rather challenge how this Court applied those guides to the underlying facts.  We therefore begin by reaffirming our outline of the common law doctrine of unconscionability that we explicated *Brown I*.

### A.  *The Doctrine of Unconscionability*

■ "The doctrine of unconscionability means that, because of an overall and gross imbalance, one-sidedness or lop-sidedness in a contract, a court may be justified in refusing to enforce the contract as written.  The concept of unconscionability must be applied in a flexible manner, taking into consideration all of the facts and circumstances of a particular case." [22]  "Unconscionability has generally been recognized to include an absence of meaningful choice on the part of one of the parties together with contract terms which are unreasonably favorable to the other party." [23]

■ Undertaking "[a]n analysis of whether a contract term is unconscionable necessarily involves an inquiry into the circumstances surrounding the execution of the contract and the fairness of the contract as a

**19.** *State ex rel. Richmond American Homes of West Virginia, Inc. v. Sanders,* 228 W.Va. 125, 129, 717 S.E.2d 909, 913 (2011) (*citing Mastrobuono v. Shearson Lehman Hutton, Inc.,* 514 U.S. 52, 56, 115 S.Ct. 1212, 131 L.Ed.2d 76 (1995)).

**20.** *Brown I,* 228 W.Va. at 664, 724 S.E.2d at 268. We went on to find in *Brown I* that:

> Ultimately, people being admitted to long-term care facilities and their families have to sign admission contracts without time to comparison shop or to negotiate the best service and price combination.  The pressures of deciding placement at such a time, coupled with physical and/or mental infirmities, facing discharge from the hospital, financial limitations, and/or lack of knowledge about long-term care options make consumers vulnerable and dependent on full disclosure by facilities.  In such an environment, it is common that resi-

dents or their family members rarely know that the admission contract contains provisions that go far beyond the medical care and other services the facility promises (or is expected) to provide and that, instead, have serious implications for their legal and constitutional rights. 228 W.Va. at 666, 724 S.E.2d at 270 (quotations and citations omitted).

**21.** 228 W.Va. at 664, 724 S.E.2d at 268.

**22.** Syllabus Point 12, *Brown I. See also,* Syllabus Point 2, *Ashland Oil, Inc. v. Donahue,* 159 W.Va. 463, 223 S.E.2d 433 (1976) ("[P]rovisions of an agreement ... which, if applied strictly, are so one-sided as to lead to absurd results, will be declared unconscionable.").

**23.** *Williams v. Walker–Thomas Furniture Co.,* 350 F.2d 445, 449 (D.C.Cir.1965).

whole."[24] "A determination of unconscionability must focus on the relative positions of the parties, the adequacy of the bargaining position, the meaningful alternatives available to the plaintiff, and 'the existence of unfair terms in the contract.'"[25] "[T]he particular facts involved in each case are of utmost importance since certain conduct, contracts or contractual provisions may be unconscionable in some situations but not in others."[26]

■ "Unconscionability is an equitable principle, and the determination of whether a contract or a provision therein is unconscionable should be made by the court."[27] The court is charged with resolving the question of whether a contract provision was bargained for and valid.[28] "If a court, as a matter of law, finds a contract or any clause of a contract to be unconscionable, the court may refuse to enforce the contract, enforce the remainder of the contract without the unconscionable clause, or limit the application of any unconscionable clause to avoid any unconscionable result."[29]

■ "Under West Virginia law, we analyze unconscionability in terms of two component parts: procedural unconscionability and substantive unconscionability."[30] "Procedural and substantive unconscionability often occur together, and the line between the two concepts is often blurred. For instance, overwhelming bargaining strength against an inexperienced party (procedural unconscionability) may result in an adhesive form contract with terms that are commercially unreasonable (substantive unconscionability)."[31] "A contract term is unenforceable if it is both procedurally and substantively unconscionable. However, both need not be present to the same degree. Courts should apply a 'sliding scale' in making this determination: the more substantively oppressive the contract term, the less evidence of procedural unconscionability is required to come to the conclusion that the clause is unenforceable, and vice versa."[32]

■ We set forth the following guidelines for determining procedural unconscionability in Syllabus Point 17 of *Brown I*:

> Procedural unconscionability is concerned with inequities, improprieties, or unfairness in the bargaining process and formation of the contract. Procedural unconscionability involves a variety of inadequacies that results in the lack of a real and voluntary meeting of the minds of the parties, considering all the circumstances surrounding the transaction. These inadequacies include, but are not limited to, the age, literacy, or lack of sophistication of a party; hidden or unduly complex contract terms; the adhesive nature of the contract; and the manner and setting in which the contract was formed, including whether each party had a reasonable opportunity to understand the terms of the contract.[33]

"Considering factors such as these, courts are more likely to find unconscionability in consumer transactions and employment agreements than in contracts arising in pure-

**24.** Syllabus Point 3, *Troy Min. Corp. v. Itmann Coal Co.*, 176 W.Va. 599, 346 S.E.2d 749 (1986).

**25.** Syllabus Point 4, *Art's Flower Shop, Inc. v. Chesapeake and Potomac Telephone Co. of West Virginia, Inc.*, 186 W.Va. 613, 413 S.E.2d 670 (1991).

**26.** Syllabus Point 2, *Orlando v. Finance One of West Virginia, Inc.*, 179 W.Va. 447, 369 S.E.2d 882 (1988).

**27.** Syllabus Point 1, *Troy Mining Corp. v. Itmann Coal Co.*, 176 W.Va. 599, 346 S.E.2d 749 (1986).

**28.** *See* Syllabus Point 3, *Board of Ed. of Berkeley County v. W. Harley Miller, Inc.*, 160 W.Va. 473, 236 S.E.2d 439 (1977) ("[W]here a party alleges that the arbitration provision was unconsciona-

ble or was thrust upon him because he was unwary and taken advantage of, or that the contract was one of adhesion, the question of whether an arbitration provision was bargained for and valid is a matter of law for the court to determine by reference to the entire contract, the nature of the contracting parties, and the nature of the undertakings covered by the contract.").

**29.** Syllabus Point 16, *Brown I*.

**30.** *Brown I*, 228 W.Va. at 681, 724 S.E.2d at 285.

**31.** *Brown I*, 228 W.Va. at 684, 724 S.E.2d at 288.

**32.** Syllabus Point 20, *Brown I*.

**33.** Syllabus Point 17, *Brown I*.

ly commercial settings involving experienced parties." [34]

■■■ Procedural unconscionability often begins with a contract of adhesion.

A contract of adhesion is one drafted and imposed by a party of superior strength that leaves the subscribing party little or no opportunity to alter the substantive terms, and only the opportunity to adhere to the contract or reject it. A contract of adhesion should receive greater scrutiny than a contract with bargained-for terms to determine if it imposes terms that are oppressive, unconscionable or beyond the reasonable expectations of an ordinary person.[35]

As we recognized in *State ex rel. Dunlap v. Berger*, "[f]inding that there is an adhesion contract is the beginning point for analysis, not the end of it; what courts aim at doing is distinguishing good adhesion contracts which should be enforced from bad adhesion contracts which should not." [36]

■■■ "Substantive unconscionability involves unfairness in the contract itself and whether a contract term is one-sided and will have an overly harsh effect on the disadvantaged party. The factors to be weighed in assessing substantive unconscionability vary with the content of the agreement. Generally, courts should consider the commercial reasonableness of the contract terms, the purpose and effect of the terms, the allocation of the risks between the parties, and public policy concerns." [37]

■■■ Substantive unconscionability may manifest itself in the form of "an agreement requiring arbitration only for the claims of the weaker party but a choice of forums for the claims of the stronger party." [38] "Some courts suggest that mutuality of obligation is the locus around which substantive unconscionability analysis revolves." [39] "Agreements to arbitrate must contain at least 'a modicum of bilaterality' to avoid unconscionability." [40]

34. *Brown I*, 228 W.Va. at 681, 724 S.E.2d at 285.

35. Syllabus Point 18, *Brown I*.

36. *State ex rel. Dunlap v. Berger*, 211 W.Va. 549, 557, 567 S.E.2d 265, 273 (2002) (quoting *American Food Management, Inc. v. Henson*, 105 Ill. App.3d 141, 145, 61 Ill.Dec. 122, 434 N.E.2d 59, 62–63 (1982)).

37. Syllabus Point 19, *Brown I*.

38. *Mercuro v. Superior Court*, 96 Cal.App.4th 167, 176, 116 Cal.Rptr.2d 671, 677 (2002).

39. *Brown I*, 228 W.Va. at 683, 724 S.E.2d at 287. *See, e.g., Abramson v. Juniper Networks, Inc.*, 115 Cal.App.4th 638, 664, 9 Cal.Rptr.3d 422, 442 (2004) ("In assessing substantive unconscionability, the paramount consideration is mutuality.").

40. *Abramson v. Juniper Networks, Inc.*, 115 Cal. App.4th at 657, 9 Cal.Rptr.3d at 437. *See, e.g., State ex rel. Richmond American Homes v. Sanders*, 228 W.Va. at 138, 717 S.E.2d at 922 (adhesion contract "established an arbitration process that lacked any modicum of bilaterality or mutuality—it limited the plaintiffs' rights [to seek damages] and not [the defendant's]" and was therefore unconscionable); Syllabus Point 6, *State ex rel. Saylor v. Wilkes*, 216 W.Va. 766, 613 S.E.2d 914 (2005) ("An employer's promise merely to review an employment application in exchange for a job applicant's promise to submit employment-related disputes not associated with the application process to arbitration does not represent consideration sufficient to create an enforceable contract to arbitrate such employment disputes."); Syllabus Point 6, *Arnold v. United Companies Lending Corp.*, 204 W.Va. 229, 237, 511 S.E.2d 854, 862 (1998) ("Where an arbitration agreement entered into as part of a consumer loan transaction contains a substantial waiver of the borrower's rights, including access to the courts, while preserving the lender's right to a judicial forum, the agreement is unconscionable and, therefore, void and unenforceable as a matter of law."). *See generally, Lowther Oil Co. v. Guffey*, 52 W.Va. 88, 91, 43 S.E. 101, 102 (1903) (where consideration "is grossly inadequate it is regarded as proof of fraud"). *See also, Dumais v. American Golf Corp.*, 299 F.3d 1216, 1219 (10th Cir.2002) ("an arbitration agreement allowing one party the unfettered right to alter the arbitration agreement's existence or its scope is illusory"); *Floss v. Ryan's Family Steak Houses, Inc.*, 211 F.3d 306, 315–16 (6th Cir.2000) (ability to choose nature of forum and alter arbitration agreement without notice or consent renders arbitration agreement illusory); *Iberia Credit Bureau, Inc. v. Cingular Wireless LLC*, 379 F.3d 159, 169 (5th Cir.2004) ("The one-sidedness of the duty to arbitrate raises a serious question as to the clause's validity."); *Ingle v. Circuit City Stores, Inc.*, 328 F.3d 1165, 1173 (9th Cir.2003) (arbitration clause "limiting its coverage to claims brought by employees" lacked bilaterality and was unconscionable); *Showmethemoney Check Cashers, Inc. v. Williams*, 342 Ark. 112, 120–121, 27 S.W.3d 361, 366–367 (Ark.2000) ("[L]ack of mutuality to arbitrate in arbitration clauses renders the clauses void as to the bound party." Agreement lacked mutuality of obli-

▮▮▮▮▮ We recently noted in *State ex rel. Richmond American Homes v. Sanders* that when "an agreement to arbitrate imposes high costs that might deter a litigant from pursuing a claim, a trial court may consider those costs in assessing whether the agreement is substantively unconscionable."[41] As even the United States Supreme Court has recognized, "[t]he existence of large arbitration costs could preclude a litigant ... from effectively vindicating her ... rights in the arbitral forum."[42] "[I]t is not only the costs imposed on the claimant but the risk that the claimant may have to bear substantial costs that deters the exercise of the constitutional right of due process."[43] In *State ex rel. Dunlap v. Berger*, we held that a trial court could consider the effect of those high costs in its substantive unconscionability analysis:

> Provisions in a contract of adhesion that if applied would impose unreasonably burdensome costs upon or would have a substantial deterrent effect upon a person seeking to enforce and vindicate rights and protections or to obtain statutory or common-law relief and remedies that are afforded by or arise under state law that exists for the benefit and protection of the public, are unconscionable; unless the court determines that exceptional circumstances exist that make the provisions conscionable. In any challenge to such a provision, the responsibility of showing the costs likely to be imposed by the application of such a provision is upon the party challenging the provision; the issue of whether the costs would impose an uncon-

scionably impermissible burden or deterrent is for the court.[44]

▮▮▮ We recognized in *Brown I* that "[n]o single, precise definition of substantive unconscionability can be articulated"[45] because "the factors to be considered vary with the content of the agreement at issue."[46] "Accordingly, courts should assess whether a contract provision is substantively unconscionable on a case-by-case basis."[47]

### B. The Parties' Arguments on Unconscionability

Plaintiff Brown and plaintiff Taylor assert that the circuit court erred in compelling them to arbitrate their claims. Both assert that the circumstances under which the admission agreement was signed (the procedure under which the contract was adopted), and the terms of the arbitration agreement contained within the defendant's admission agreement (the substance), render the arbitration agreement unconscionable and unenforceable.

▮▮▮ However, counsel for Marmet Health Care Center continues to vigorously assert that the record supports the enforceability of the arbitration clause. Furthermore, the plaintiffs—in their briefs and oral argument—assert that additional discovery, in this case and cases like it, would help to clarify whether the arbitration clauses are unenforceable. The plaintiffs contend that other courts have permitted parties opposing a motion to compel arbitration to take discovery on the unconscionability of an arbitration provision.[48] Given the United States Su-

gation where consumer was bound by arbitration in every respect, yet company could "proceed immediately to court to collect amounts due it.").

**41.** *State ex rel. Richmond American Homes v. Sanders*, 228 W.Va. at 137, 717 S.E.2d at 921.

**42.** *Green Tree Financial Corp.-Alabama v. Randolph*, 531 U.S. 79, 90, 121 S.Ct. 513, 148 L.Ed.2d 373 (2000).

**43.** *Armendariz v. Foundation Health Psychcare Services, Inc.*, 24 Cal.4th 83, 110, 99 Cal.Rptr.2d 745, 6 P.3d 669, 687 (2000).

**44.** Syllabus Point 4, *State ex rel. Dunlap v. Berger*, 211 W.Va. 549, 567 S.E.2d 265 (2002).

**45.** *Brown I*, 228 W.Va. at 684, 724 S.E.2d at 288.

**46.** *Id.*, 228 W.Va. at 683, 724 S.E.2d at 287 (quoting *Hayes v. Oakridge Home*, 122 Ohio St.3d 63, 69, 908 N.E.2d, 408, 414 (2009)).

**47.** *Id.*, 228 W.Va. at 684, 724 S.E.2d at 288.

**48.** *See Owens v. National Health Corp.*, 263 S.W.3d 876, 889 (Tenn.2007) (plaintiff, asserting that determination of the unconscionability of a nursing home arbitration agreement is fact driven, permitted discovery to develop the factual record before trial court decided that issue); *Kindred Healthcare, Inc. v. Peckler*, 2006 WL 1360282 (Ky.2006) (permitting a plaintiff discovery on the sole issue of whether arbitration agreement in nursing home admission contract was void); *Premiere Automotive Group, Inc. v. Welch*, 794 So.2d 1078, 1083 (Ala.2001) (plaintiff

preme Court's stated position on this matter—that claims of coercion, fraud, or unequal bargaining power in the formation of an arbitration agreement are "best left for resolution in specific cases" [49]—further development of the factual record by the parties is proper.

Hence, in an abundance of caution and with deference to the Supreme Court's mandate that the arbitration clauses only be found "unenforceable under state common law principles that are not specific to arbitration," [50] we determine that the fairest route is to reverse the circuit courts' prior orders and permit the parties to develop the evidence.

None of the circuit courts had the benefit of the guidelines that were developed in *Brown I*.[51] In Brown's case, the circuit court wholly failed to prepare findings of fact and conclusions of law. And, of course, in the discretion of the circuit courts, discovery may clarify the facts and circumstances surrounding the execution and fairness of the arbitration clauses.

Accordingly, the circuit court's August 25, 2009, and September 29, 2009, dismissal orders must be reversed.[52]

## IV.  Conclusion

We overrule Syllabus Point 21 of *Brown I*. We otherwise reaffirm all of our other hold-

---

entitled to limited discovery regarding entry into arbitration agreement with auto dealer). *See also, Beverly Enterprises–Mississippi Inc. v. Powell*, 244 Fed.Appx. 577 (5th Cir.2007) (remanding nursing-facility case for resolution of conflicting depositional evidence taken in discovery concerning enforceability of arbitration agreement).

In federal courts, Section 4 of the FAA (9 U.S.C § 4) provides for discovery in connection with a motion to compel arbitration if "the making of the arbitration agreement ... be in issue." *Simula, Inc. v. Autoliv, Inc.*, 175 F.3d 716, 726 (9th Cir.1999). *See also Prima Paint Corp. v. Flood & Conklin Mfg. Co.*, 388 U.S. 395, 403–04, 87 S.Ct. 1801, 18 L.Ed.2d 1270 (1967) (on application for stay pending arbitration, a federal court may consider issues relating to the making and performance of the agreement to arbitrate); *Hamby v. Power Toyota Irvine*, 798 F.Supp.2d 1163, 1165 (S.D.Cal.2011) (permitting discovery on unconscionability as a generally applicable contract defense); *Newton v. Clearwire Corp.*, 2011 WL 4458971 (E.D.Cal. Sept. 23, 2011) (finding plaintiff entitled to much of the discovery she sought because it was relevant to her argument that the arbitration clause at issue produces overly harsh or unjustifiably one-sided results, and therefore is unconscionable); *Hesse v. Sprint Spectrum, L.P.*, 2012 WL 37399 (W.D.Wash. Jan. 9, 2012) (permitting sixty days of discovery on the alleged unconscionability of the arbitration clauses).

**49.** *Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 33, 111 S.Ct. 1647, 114 L.Ed.2d 26 (1991).

**50.** *Marmet Health Care Center, Inc. v. Brown*, 565 U.S. at ——, 132 S.Ct. at 1204.

**51.** The circuit courts also did not have the benefit of cases interpreting and applying *Brown I*. *See, e.g., State ex rel. Richmond American Homes v. Sanders*, 228 W.Va. 125, 129, 717 S.E.2d 909, 913 (2011); *State ex rel. Johnson Controls, Inc. v. Tucker*, 229 W.Va. 486, 729 S.E.2d 808, 2012 WL 2226342 (2012).

**52.** The plaintiffs posit that the arbitration clauses in all three cases are unenforceable for two other reasons.

First, the plaintiffs argue it is impossible to comply with the arbitration clauses. The Marmet Health Care Center arbitration clause requires "binding arbitration in accordance with the *Commercial Arbitration Rules* of the American Arbitration Association[.]" However, effective January 1, 2003, the American Arbitration Association announced that "it will no longer accept the administration of cases involving individual patients without a post-dispute agreement to arbitrate." American Arbitration Association, "Healthcare Policy Statement," *www.adr.org*. The Clarksburg Nursing and Rehabilitation Center arbitration clause requires "binding arbitration ... in accordance with the Code of Procedure of the National Arbitration Forum ('NAF') which is hereby incorporated into this Agreement[.]" However, the National Arbitration Forum announced it would "cease to administer consumer arbitration disputes as of Friday, July 24, 2009, as part of a settlement agreement with the Minnesota Attorney General." *http://www.adrforum.com/newsroom.aspx?&itemID=1528&news=3*.

Since neither the American Arbitration Association, nor the National Arbitration Forum, can hear the parties' disputes, the plaintiffs assert that the arbitration clauses are void. *See, e.g., Stewart v. GGNSC–Canonsburg, L.P.*, 9 A.3d 215 (Pa.Super.2010) (unavailability of the National Arbitration Forum to resolve dispute with nursing home rendered arbitration clause unenforceable).

Second, the plaintiffs argue that there is no evidence in the record that the family member who signed each admission agreement had the legal authority to sign an arbitration clause, and thereby waive the resident's or resident's heirs right to pursue action in court.

We decline to consider these two arguments, which should be considered by the trial court first.

ings from *Brown I.* Accordingly, in the Brown case, the circuit court's August 25, 2009, order is reversed and the case is remanded for further proceedings. In the Taylor case, the circuit court's September 29, 2009, order is reversed, and the case is remanded for further proceedings. Finally, in the Marchio case, the circuit court's certified question whether Section 15(c) was preempted by the FAA is, as reformulated in *Brown I,*[53] answered "Yes."

*Case No. 35494,* Reversed and remanded.

*Case No. 35546,* Reversed and remanded.

*Case No. 35636,* Certified question answered.

---

53. 228 W.Va. at 692–693, 724 S.E.2d at 296–297.