**STATE OF WEST VIRGINIA**
**IN THE SUPREME COURT OF APPEALS**

**BOARD OF TRUSTEES**
**OF THE WEIRTON POLICEMEN'S**
**PENSION AND RELIEF FUND**
Plaintiff Below, Petitioner

**FILED**
November 21, 2013
released at 3:00 p.m.
RORY L. PERRY II, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

vs.) No. 12-0959 (Hancock Co. 10-C-123)

**The Jones Financial Companies, LLP;**
**EDJ Holding Company, Inc.;**
**Edward D. Jones & Co., L.P.; and**
**CURT RANDY GROSSMAN,**
**Defendants Below, Respondents**


**MEMORANDUM DECISION**

The Petitioner, the Board of Trustees of the Weirton Policemen's Pension and Relief Fund, appeals from an order entered June 19, 2012, by the Circuit Court of Hancock County which granted Respondents, The Jones Financial Companies, LLP, EDJ Holding Company, Inc., Edward D. Jones & Co., L.P. and Curt Randy Grossman's, Motion to Compel Arbitration.[1] Herein, Petitioner alleges that the circuit court erred by ordering that the arbitration agreement was valid and enforceable by misinterpreting the impact of the United States Supreme Court decision, *Marmet Health Care Ctr v. Brown*, 132 S.Ct. 1201 (2012); by refusing to determine whether the arbitration agreement was procedurally and substantively unconscionable pursuant to *Brown v. Genesis Healthcare Corp.*, 228 W. Va. 646, 724 S.E.2d 250 (2011) ("*Brown I*") and *Brown v. Genesis Healthcare Corp.*, 229 W. Va. 382, 729 S.E.2d 217 (2012) ("*Brown II*"); and by refusing to assess the impact of the ambiguity of the arbitration agreement. To the contrary, Respondents assert that the circuit court did not refuse to determine whether the arbitration agreement was procedurally and substantively unconscionable, but rather found that the particular agreement to arbitrate was enforceable; and that the Petitioner failed to establish evidence of unconscionability. Based upon the parties' briefs and oral arguments, the portions of the record designated for our consideration, and the pertinent authorities, we conclude that the case should be remanded to the circuit court for a consideration of whether the arbitration agreement is procedurally and substantively unconscionable under *Brown I* and *Brown II*. This case satisfies the "limited

---

[1] Petitioner is represented by Teresa C. Toriseva, Esq. Respondents are represented Matthew P. Heiskell, Esq., James A. Walls, Esq., and Loren Schechter, Esq.

circumstances" requirement of Rule 21(d) and it is appropriate for the Court to issue a memorandum decision rather than an opinion.

The Weirton Policemen's Pension and Relief Fund was created pursuant to W.Va. Code § 8-22-16, *et seq* (2009).[2] Pursuant to state law, it has a five member board of trustees and it may contract with investment advisors. *See* W.Va. Code §§ 8-22-17, -22.[3] On April 13, 2006, the trustees opened three different brokerage accounts with Edward Jones and a registered financial advisor employed by Edward Jones, Curt Randy Grossman.[4]

When opening these accounts in March 2006, Trustee (and Weirton Mayor) William Miller signed a "Fiduciary/Trust Account Authorization and Acknowledgment Form" ("Authorization") for each account. This single-page form states, *inter alia*,

> **The Edward Jones Account Agreement and Disclosure Statement contains, on page 19, paragraph 2, a binding arbitration provision which may be enforced by the parties.** By my/our signature(s) below, I/we have received a copy of this document including a schedule of fees and Edward Jones Privacy Notice and agree to its terms and conditions.

(Emphasis in original.) Accompanying the Authorizations is a multi-page "Edward Jones Account Agreement and Disclosure Statement" which includes the arbitration agreement on page 19. The arbitration agreement states:

> This Agreement contains a predispute arbitration clause. By signing an arbitration agreement the parties agree as follows:

---

[2] Specifically, W. Va. Code § 8-22-18a (2009) creates a Pension Oversight Board "to assure prudent administration, investment and management of the funds" and to "assure the funds' compliance with applicable laws." West Virginia Code § 8-22-22 (2009) sets forth the duties of the board of trustees generally, including their right to delegate investment authority to a professional investment advisor.

[3] The trustees have included former mayors of Weirton and full-time police officers.

[4] Respondent Edward D. Jones & Co. L.P. ("Edward Jones") is a registered broker-dealer. It is a Missouri partnership and is authorized to do business in the State of West Virginia. The Jones Financial companies LLP is the parent company of Edward Jones and is a Missouri partnership. EDJ Holding Company is affiliated with Edward Jones and The Jones Financial Companies LLLP, and is a Missouri corporation. Curt Randy Grossman was formerly employed by Edward Jones in Pittsburgh, Pennsylvania.

1. All parties to this Agreement are giving up the right to sue each other in court, including the right to a trial by jury, except as provided by the rules of the arbitration forum in which a claim is filed.
2. Arbitration awards are generally final and binding; a party's ability to have a court reverse or modify an arbitration award is very limited.
3. The ability of the parties to obtain documents, witness statements and other discovery is generally more limited in arbitration that in court proceedings.
4. The arbitrators do not have to explain the reason(s) for their award.
5. The panel of arbitrators will typically include a minority of arbitrators who were or are affiliated with the securities industry.
6. The rules of some arbitration forums may impose time limits for bringing a claim in arbitration. In some cases, a claim that it ineligible in arbitration may be brought in court.
7. The rules of the arbitration forum in which the claim is filed, and any amendments thereto, shall be incorporated into this Agreement.

I agree that this Agreement shall be governed by the laws of the State of Missouri without giving effect to the choice of law or conflict of laws provisions thereof. Any controversy arising out of or relating to any of my accounts or transactions with you, your officers, directors, agents and/or employees for me, to this Agreement, or to the breach thereof, or relating to transactions or accounts maintained by me with any of your predecessor or successor firms by merger, acquisition or other business combinations from the inception of such accounts shall be settled by arbitration in accordance with the rules then in effect of the Board of Directors of the New York Stock Exchange, Inc., or the National Association of Securities Dealers, Inc. as I may elect.

No person shall bring a putative or certified class action to arbitration, nor seek to enforce any pre-dispute arbitration agreement against any person who has initiated in court a putative class action, or who is a member of a putative class who has not opted out of the class with respect to any claims encompassed by the putative class action until: (i) the class

certification is denied; or (ii) the class is decertified; or (iii) the customer is excluded from the class by the court. Such forbearance to enforce an agreement to arbitrate shall not constitute a waiver of any rights under this Agreement except to the extent stated herein.

The Edward Jones Authorizations were renewed annually. On August 20, 2007; February 3, 2009; September 28, 2009; and October 2, 8, 16, 2009, each of the trustees signed new Authorizations for each of the three brokerage accounts, again incorporating the arbitration agreement. More than ten separate authorizations were executed.

The trustees maintained these investment accounts with Edward Jones until 2010. On July 30, 2010, the trustees filed suit against Edward Jones alleging that it had made improper investments in violation of W.Va. Code § 8-22-22 and asserting claims for negligence *per se*, breach of fiduciary duty, and breach of the implied covenant of good faith and fair dealing. On October 13, 2010, Edward Jones filed a motion to compel arbitration and to stay the litigation. After a significant time had passed, the trustees noticed the arbitration issue for a hearing on February 15, 2012. No discovery had occurred. On May 2, 2012, the trustees filed a written objection to the motion to compel arguing that the arbitration provision was unconscionable. The trustees argued that *Brown I* was controlling and that the arbitration provision was both procedurally and substantively unconscionable, that it was ambiguous, and that it should be stricken. The next day, May 3, the trustees supplemented their brief by bringing to the circuit court's attention the United States Supreme Court's recent ruling in *Marmet Health Care Ctr v. Brown*, 132 S.Ct. 1201 ("*Marmet*"), which partially reversed this Court's decision in *Brown I* and remanded the case for further proceedings to determine the application of West Virginia law in light of the partial reversal of its *per se* rule against arbitration agreements in nursing home contracts. Although Petitioner filed the supplemental brief pointing out its omission of the *Marmet* case, it argued that the case left the arguments that it was advancing unaffected.

At the May 4, 2012, hearing, the circuit court expressed a strong dislike for arbitration agreements, but felt that it had no choice but to compel arbitration in this matter in light of the United States Supreme Court's decision in *Marmet*. Counsel for the trustees sought to argue that the contract was procedurally and substantively unconscionable, but the circuit court found that it was not and would not entertain oral argument on that issue. Judge Recht made the following statements:

> THE COURT: I have read all of the papers, and most important, of course, I have read the United States Supreme Court's opinion in Marmet Health Care Center, Inc. versus

4

Brown. That is dispositive of this case. Period. There's no getting around it.

. . .

THE COURT: "There are times, probably, if, in fact, there is an attack on the contract itself, for example, going back to your law school days, if there was no meeting of the minds, go back to those --- you remember in Williston you had all of the ingredients of a contract, you could attack it on that basis, and then I think the Arbitration Clause would fail with it, or if you had testimony – and I don't see anything here – where there may have been a question asked at the time that this contract was entered into, "Is there an Arbitration Clause in the contract?" And they say, "no," then, of course, you have fraud. There is no allegation of that point. That would change things, but I see nothing in this case that has that.

THE COURT: So I am following the United States Supreme Court opinion. . . .

. . .

I have no choice here, so the Motion is granted.

Believing that *Marmet* was dispositive of the issue and that no further analysis was needed, the circuit court expressed frustration with Petitioner's counsel for not originally citing to the United States Supreme Court case that partially overruled *Brown I*. The circuit court refused to entertain Petitioner's argument that notwithstanding *Marmet*, the court still has a duty to analyze procedural and substantive unconscionability. The following discussion between Judge Recht and Petitioner's counsel took place:

THE COURT: As a matter of fact, you didn't even know about the Supreme Court's opinion, and that bothered me. That bothered me a great deal. When I read the first Brief, and you're relying on upon the West Virginia Supreme Court case, that wasn't right, just wasn't right. And you found out about it, and I got another paper this morning. It's there.

That is it. It speaks for itself and there is nothing more to say.

5

MS. TORISEVA: I understand, Your Honor. If I may just have 30 seconds. I do believe this Court has authority to examine our contractual arguments, not a categorical rule against arbitration, but our contractual arguments about this arbitration provision. In fact, not only do you have the right to do so, I think you have the duty to do so ----

THE COURT: Why?

MS. TORISEVA: ---- because we've objected. That's the law.

THE COURT: What are you going to put on? What facts are you going to put on regarding this contract?

MS. TORISEVA: That it's both procedurally and substantively unconscionable --

THE COURT: It is not. It is not.

MS. TORISEVA: I understand, Your Honor.

THE COURT: And you are -- again, it is the way that you continually try to get around these things. I don't blame you. I'm not critical of those efforts, but it just can't be done. It cannot be done. Not in this case. And unless -- I mean, they put these in every contract there is.

The contract in the nursing home case, I mean, there is just a pure negligent -- I mean, next time you go anywhere, you go into a hospital, you're going to have an Arbitration Clause. You buy a product, you sign an Arbitration Clause. It's going to get rid of the entire jury system.

Talk about tort reform, there is not going to be any torts at all that are heard by a jury, and that's how bad it is. I agree with you.

And with those findings, how I disagree with the concept, I cannot and I will not, go against the United States Supreme Court's opinion in Brown. So prepare the Order.

Following that hearing, by order entered June 19, 2012, the circuit court granted the motion to compel arbitration. In its findings of fact and conclusions of law, the order the court found, *inter alia*, that a valid arbitration agreement exists, the trustees' claims fall entirely within the scope of the arbitration agreement, and the arbitration agreement is not procedurally or substantively unconscionable. However, the order contained no reasoning or analysis supporting its finding regarding unconscionability.

Shortly following the entry of the circuit court's order, this Court issued a ruling upon remand from the United States Supreme Court decision in *Marmet*. Upon remand, in *Brown II*, this Court overruled syllabus point 21 of *Brown I*, which contained the *per se* rule invalidating arbitration agreements in nursing home contracts. Syl. Pt. 3, *Brown II*, 229 W. Va. 382, 729 S.E.2d 217. However, we explained that arbitration provisions can, in fact, still be voided if they are procedurally or substantively unconscionable under West Virginia law, as set forth in *Brown I*. *Brown II*, 229 W. Va. at 391, 729 S.E.2d at 226. Herein, Petitioner alleges that this matter should be reversed and remanded to allow the circuit court the benefit of the reasoning in *Brown II*. We agree.

At the time the circuit court entered its order compelling arbitration in this case, it did not have the benefit of this Court's opinion in *Brown II*, wherein we stated,

> In accordance with the Supreme Court's mandate, we overrule Syllabus Point 21 of *Brown I*. We otherwise find that the Supreme Court's decision does not counsel us to alter our original analysis of West Virginia's common law of contracts. The doctrine of unconscionability that we explicated in *Brown I* is a general, state, common-law, contract-law principle that is not specific to arbitration, and does not implicate the FAA.

229 W. Va. at 388, 729 S.E.2d. at 222-223. In so holding, we reaffirmed syllabus point 6 of *Brown I*, which states:

> Under the Federal Arbitration Act, 9 U.S.C. §2, a written provision to settle by arbitration a controversy arising out of a contract that evidences a transaction affecting interstate commerce is valid, irrevocable, and enforceable, unless the provision is found to be invalid, revocable or unenforceable upon a ground that exists at law or in equity for the revocation of any contract.

Syl. Pt. 1, *Brown II*.

7

We previously explained in syllabus point 12 of *Brown I* that "[t]he doctrine of unconscionability means that, because of an overall and gross imbalance, one-sidedness or lop-sidedness in a contract, a court may be justified in refusing to enforce the contract as written. The concept of unconscionability must be applied in a flexible manner, taking into consideration all of the facts and circumstances of a particular case." 228 W. Va. 646, 724 S.E.2d 250. We also stated that "[u]nder West Virginia law, we analyze unconscionability in terms of two component parts: procedural unconscionability and substantive unconscionability." *Id.* at 681, 724 S.E.2d at 285. "Procedural and substantive unconscionability often occur together, and the line between the two concepts is often blurred. For instance, overwhelming bargaining strength against an inexperienced party (procedural unconscionability) may result in an adhesive form contract with terms that are commercially unreasonable (substantive unconscionability)." *Id.* at 684, 724 S.E.2d at 288. In syllabus point 20 of *Brown I*, we held,

> [a] contract term is unenforceable if it is both procedurally and substantively unconscionable. However, both need not be present to the same degree. Courts should apply a 'sliding scale' in making this determination: the more substantively oppressive the contract term, the less evidence of procedural unconscionability is required to come to the conclusion that the clause is unenforceable, and vice versa.

228 W. Va. 646, 724 S.E.2d 250.

In *Brown II*, we also reaffirmed the following guidelines for determining procedural unconscionability that were set forth in Syllabus Point 17 of *Brown I*:

> Procedural unconscionability is concerned with inequities, improprieties, or unfairness in the bargaining process and formation of the contract. Procedural unconscionability involves a variety of inadequacies that results in the lack of a real and voluntary meeting of the minds of the parties, considering all the circumstances surrounding the transaction. These inadequacies include, but are not limited to, the age, literacy, or lack of sophistication of a party; hidden or unduly complex contract terms; the adhesive nature of the contract; and the manner and setting in which the contract was formed, including whether each party had a reasonable opportunity to understand the terms of the contract.

Syl. Pt. 10, *Brown II*. Reiterating the law set forth in *Brown I* regarding unconscionability, we emphasized in *Brown II* that procedural unconscionability often

begins with a contract of adhesion. *Id.* at 393, 729 S.E.2d at 228. We restated syllabus point 18 of *Brown I*, which states,

> [a] contract of adhesion is one drafted and imposed by a party of superior strength that leaves the subscribing party little or no opportunity to alter the substantive terms, and only the opportunity to adhere to the contract or reject it. A contract of adhesion should receive greater scrutiny than a contract with bargained-for terms to determine if it imposes terms that are oppressive, unconscionable or beyond the reasonable expectations of an ordinary person.

Syl. Pt. 11, *Brown II*. We also reemphasized our prior statement in *State ex rel. Dunlap v. Berger*, 211 W.Va. 549, 567 S.E.2d 265 (2002), that "[f]inding that there is an adhesion contract is the beginning point for analysis, not the end of it; what courts aim at doing is distinguishing good adhesion contracts which should be enforced from bad adhesion contracts which should not." *Id.* at 557, 567 S.E.2d at 273.

As for the factors to consider in assessing substantive unconscionabilty, we set forth in syllabus point 19 of *Brown I*, that

> [s]ubstantive unconscionability involves unfairness in the contract itself and whether a contract term is one-sided and will have an overly harsh effect on the disadvantaged party. The factors to be weighed in assessing substantive unconscionability vary with the content of the agreement. Generally, courts should consider the commercial reasonableness of the contract terms, the purpose and effect of the terms, the allocation of the risks between the parties, and public policy concerns.

Syl. Pt. 19, *Brown I*. We recognized in *Brown II* that

> [s]ubstantive unconscionability may manifest itself in the form of "an agreement requiring arbitration only for the claims of the weaker party but a choice of forums for the claims of the stronger party." (footnote omitted). "Some courts suggest that mutuality of obligation is the locus around which substantive unconscionability analysis revolves." (footnote omitted). "Agreements to arbitrate must contain at least 'a modicum of bilaterality' to avoid unconscionability." (footnote omitted).

9

229 W. Va. at 393, 729 S.E.2d at 228. In *State ex rel. Richmond American Homes v. Sanders,* 228 W. Va. 125, 129, 717 S.E.2d 909, 913 (2011), we stated that when "an agreement to arbitrate imposes high costs that might deter a litigant from pursuing a claim, a trial court may consider those costs in assessing whether the agreement is substantively unconscionable." *Id.* at 137, 717 S.E.2d at 921. We also held in *State ex rel. Dunlap v. Berger*, 211 W.Va. 549, 567 S.E.2d 265 that,

> [p]rovisions in a contract of adhesion that if applied would impose unreasonably burdensome costs upon or would have a substantial deterrent effect upon a person seeking to enforce and vindicate rights and protections or to obtain statutory or common-law relief and remedies that are afforded by or arise under state law that exists for the benefit and protection of the public, are unconscionable; unless the court determines that exceptional circumstances exist that make the provisions conscionable. In any challenge to such a provision, the responsibility of showing the costs likely to be imposed by the application of such a provision is upon the party challenging the provision; the issue of whether the costs would impose an unconscionably impermissible burden or deterrent is for the court.

*Id.*, syl. pt. 4. "No single, precise definition of substantive unconscionability can be articulated" because "the factors to be considered vary with the content of the agreement at issue." *Brown I*, 228 W.Va. at 683-84, 724 S.E.2d at 287-88. "Accordingly, courts should assess whether a contract provision is substantively unconscionable on a case-by-case basis." *Id.*

Based on the foregoing, we find that this case should be reversed and remanded to allow the parties an opportunity to present evidence of, and the circuit court to thoroughly consider, the factors set forth in *Brown I* and reaffirmed in *Brown II* regarding procedural and substantive unconscionability. On remand, the circuit court is ordered to enter an order setting forth the requisite findings of fact and conclusions of law supporting its ruling.

Accordingly, the case is reversed and remanded for further proceedings consistent with this opinion.

Reversed and Remanded.

10

**ISSUED:** November 21, 2013

**CONCURRED IN BY:**

Chief Justice Brent D. Benjamin
Justice Robin Jean Davis
Justice Margaret L. Workman
Justice Menis E. Ketchum
Justice Allen H. Loughry, II

11